This is a suit under the Workmen's Compensation Act of this State, No. 20 of 1914, as amended. Plaintiff, while in defendant's employ and in the course and scope of his employment, received an injury to his right arm in the following manner:
While plaintiff was manipulating an electric loader, his right arm was caught and pressed between said loader and a grass rope, fracturing both bones of said lower arm and crushing them from about four inches from his wrist up the arm for a distance of approximately four inches. Defendant sent plaintiff to its local doctor who placed the arm in splints and treated him for five weeks. He was then sent to Dr. Durham, a bone specialist in Shreveport, Louisiana, who found it necessary to operate on the arm. The operation performed consumed from three to four *Page 680 
hours' time and the bones were held together by metal plates and screws which went entirely through the bone and protruded into the flesh and tissues surrounding the bones. The arm was also placed in a plaster cast. The accident occurred on July 12, 1942 and both radius and ulna bones were broken. The plaster cast was removed from the arm in November, 1942.
Plaintiff was earning more than $40 per week at the time of the accident and was paid compensation for a period of seven weeks, or through August 30, 1942. A few days thereafter, plaintiff was given a job of training or teaching other employees whom defendant was breaking in for shipping clerks, and plaintiff was holding the job of shipping clerk at the time he was injured. He was paid the same salary or wage while training the other employees as he had received prior to the accidental injury, and held this job until about the middle of January, 1943 when he was given his old job as shipping clerk. Plaintiff did not work as regularly at this job as defendant thought he should and he was shifted to a job of sweeping the floors. Plaintiff held this last position for a few days and either quit or was discharged.
Plaintiff contends that he was often required to lay off because of the pain he suffered in his arm and that when he was put to sweeping the floors, the pain was so great he had to notify his employer of his inability to hold the job. There is no evidence in the record to disclose that defendant had any complaint about plaintiff's work prior to the injury to his arm. Plaintiff testified that the pain in his arm was continuous and that he was forced to lay off and not report for work because of the severe pain. After plaintiff ceased working for defendant, he tried to secure a job with the Louisiana Ordnance Plant, without success, and also tried to get a position with the Tri-State Bus Line, but was turned down on account of the condition of his arm. Plaintiff complains of pain in his arm, lack of grip in his right hand and lack of power to properly rotate his arm, and that any lick or blow on the arm which he might receive in using the arm in any work would cause it to swell and become extremely painful. It is shown that this happened once when he struck his arm against a car door in alighting from a car. Plaintiff contended below and here that his arm is in such condition as to render him totally incapacitated for any work of a reasonable character. It is defendant's contention that plaintiff's arm has healed and that he is not incapacitated because of the injuries and that this has been demonstrated by the work he performed for it after the injury.
The lower Court awarded judgment for the plaintiff in the sum of $5 per week, beginning February 13, 1943, the date he ceased working for defendant, not to exceed 300 weeks from July 12, 1942, the date of injury, and fixed the fees of the expert witnesses. Both plaintiff and defendant have appealed, defendant praying that plaintiff's demands be rejected in toto and plaintiff praying that he have judgment for $20 per week not to exceed 400 weeks, less the seven weeks for which compensation was paid.
Defendant did not offer the testimony of either of its doctors who treated and operated on plaintiff's arm. Their testimony should have thrown much light on the case, especially the testimony of Dr. Durham, who operated and placed the plates and screws through the bones to hold them in proper apposition. The medical testimony offered in the case is to the fact that the screws should not have been left protruding into the flesh, tendons and muscles around the bones. In law we can safely presume that the testimony of these two doctors would not have helped defendant's case or their testimony would have been secured and offered for trial below. The X-ray pictures show there are three screws protruding entirely through one of the bones and into the flesh and tendons surrounding the bone, and two screws protruding through the other bone. It also shows a portion of the bone has been broken off by the screws or other causes.
It is clearly established that plaintiff has very little grip in his right hand and that he cannot rotate the arm as he should be able to do. This, the testimony shows, is due to the protrusion of the screws through the bones and into the flesh. The preponderance of the medical testimony is that any movement of the arm would cause the muscles and tendons to come in contact with these sharp screws and cause pain. There is some testimony to the contrary, but to find that sharp-pointed and sharp-edged screws sticking into the arm would not be painful when using the arm, would be contrary to common knowledge and sense. The X-ray plates alone are sufficient corroboration of plaintiff's *Page 681 
testimony that his arm pains him all the time, and especially when he makes use of it.
Plaintiff is to be commended rather than censured for his efforts to work. He was earning a good salary and did not wish to lose it and was not satisfied to accept compensation in lieu of his salary as long as defendant allowed him to hold a job in the condition he was. However, plaintiff was unable to secure a job anywhere else, due to his bad arm. The job he had with defendant after his injury until about the middle of January, 1943 did not require the use of his arm, and when he was given his old job back, plaintiff could not work regularly because of the pain it caused him, and he was not able to hold the sweeping job for the same reason.
Our law does not require a man to work after having been injured if working causes him pain due to that injury and to do so would be abolish in part, at least, the humane theory of the Compensation Act. Plaintiff is right-handed and we are convinced he cannot do any work of a reasonable character without enduring much pain in his right arm and he is, therefore, under the intendment of the Workmen's Compensation Act of this State, totally and permanently disabled. It might be if an operation were performed and the screws and broken parts of bone removed, that his arm will heal and his trouble be ended, however, that is problematical.
Plaintiff was paid compensation for seven weeks and was paid wages for a full 24 weeks up to February 13, 1943, or a total of 31 weeks, for which defendant is entitled to credit on any judgment in favor of plaintiff. Plaintiff is entitled to judgment in the sum of $20 per week for a period not to exceed 400 weeks, beginning July 19, 1942.
The lower Court found plaintiff to be partially permanently disabled and awarded him $5 per week compensation. We are not favored with written reasons for its judgment and are at a loss, after an examination of the record, to know how it arrived at its figure. The proper basis for a judgment under the lower Court's finding, under our Compensation Law, is sixty-five per cent of the difference between what the plaintiff earned or was capable of earning after the injury and his wages at the time of the injury.
Plaintiff complains of the fees fixed for the experts, Drs. C.H. Mosley, D.H. Alverson and S.M. Richardson. The fee fixed by the lower Court for Dr. Richardson, who resides in the City where the case was tried, is the customary fee of $25 which we see no reason to disturb. Dr. Alverson, who lived in Shreveport, was awarded $35, and Dr. Mosley, who lives in Monroe, was awarded $35. While it is true Dr. Mosley had to travel 75 miles each way to attend court, and Dr. Alverson had to travel 30 miles each way, the testimony of either or both could have been taken by deposition, thereby alleviating the necessity to travel, and defendant cannot be forced to pay the heavy fees because plaintiff desired to have them present at the trial. The testimony of these doctors was as to plaintiff's condition as found from their examinations and there was no absolute necessity for them to be present at the trial. If doctors were allowed fees according to the distance they traveled to and from Court with no limit placed as to where they are to come from, the burden could be unbearable and entirely out of proportion to their value as witnesses. We see no reason to disturb the award as fixed by the lower Court.
Since we find that under the intendment of the Workmen's Compensation Act of this State plaintiff is totally and permanently disabled from performing work of a reasonable character, it becomes necessary to amend the judgment of the lower Court and, in order to do so, it is necessary to rewrite it.
It is therefore ordered, adjudged and decreed that plaintiff, Roy Lee, have and recover judgment against defendant, International Paper Company, in the sum of $20 per week for a period of disability not to exceed 400 weeks, the first payment due July 19, 1942 and each week thereafter, with five per cent per annum interest, on each past-due payment, less a credit of 31 weekly payments; and it is further decreed that the expert witness fees of Drs. C.H. Mosley and D.H. Alverson be fixed at $35 each and Dr. S.M. Richardson at $25, and taxing same as costs; the fee of the attorney for the plaintiff herein is fixed at one-fifth the net amount paid plaintiff under this judgment. All costs to be paid by the defendant. *Page 682