This is a compensation suit in which the facts, briefly stated, are as follows:
The plaintiff who is a boiler maker by trade, was employed in his capacity as such by Jones and Laughlin Supply Company during the early days of June 1947. He was performing the regular duties of a boiler maker involving work which is as rough and as heavy as that in any trade or occupation. His rate of pay was $2.00 per hour for a 40 hour work week.
On or about June 10, 1947, he was engaged, with others, on a job of setting up a four-legged upright boiler. He was fastening nuts on two inch bolts to secure the boiler to its foundation, to do which he had to use a 48 inch Stillson wrench. In catching hold of the nut to secure it and in pulling on it, the wrench slipped on the nut and hit him in the lower part of the left side of his stomach. He felt the pain which was caused by the blow, naturally, and also became sick at the stomach. He did not vomit but was nauseated and says that he could have easily produced vomiting had he urged it. He then reported the accident to the time-keeper and safety man who filled out a form and gave him a slip to go to the doctor. At his own request, he was sent to Dr. J. R. Godfrey. He is not sure but he thinks he reported to Dr. Godfrey on June 12, and on the following day his employment was terminated because the job was finished. Dr. Godfrey examined him and checked him for a hernia but told him that he could not find any. He told him that the pain he had would leave him within two or three weeks, but it never has.
A few days afterwards, he secured employment with the Steel Construction Company where his work consisted of building, lifting heavy sheets of tank, prizing, bolting and climbing up the sides of the tank, all, as will be noted, was really heavy and hard manual labor. He apparently worked with satisfaction to this employer, but suffering pain in his side all the time. On August 29, that job was terminated and he immediately sought other employment with the Solvay Process Company. That company required a medical examination and upon being examined by a doctor whose name he did not recall, he was rejected on account of a hernia. Plaintiff belonged to the Local Boiler-maker's Union and relied on the Union to secure employment for him. Inasmuch as his classification in the Union as a boiler-maker included welding also, he was sent by the local agent on a job in Monroe as a welder and from there he came back to Baton Rouge and was employed again as a welder by Stone Webster by whom he was still engaged at the time of the trial of this case.
While employed in Monroe, he came to Baton Rouge on a visit and was examined by Dr. Charles R. McVea of that city, who also found that he had a hernia. After the doctor who had examined him for employment at the Solvay Process Company reported he had a hernia, he went to see Dr. Godfrey again. That was about September 8th., and at that examination Dr. Godfrey told him that he had a small hernia and, according to plaintiff, made this statement in referring to the examination made by the doctor who examined him for the Solvay Process job: "He said from all indications if I had not coughed so loudly and hard, that doctor would never have found it out at Solvay." *Page 906 
Under this state of facts, plaintiff naturally had reason to believe that he had sustained this hernia while in the course and scope of his employment, either with Jones and Laughlin Supply Company or Steel Construction Company. Inasmuch as Dr. Godfrey, who had examined him after the accident he sustained at Jones and Laughlin Supply Company, told him he could not find a hernia, but under the facts as shown that he had continued to suffer pain after that injury, which was exactly in the region of the groin, and a hernia subsequently developed while he was doing hard manual labor at Steel Construction Company, he concluded to demand compensation from both, claiming that if the accident did not produce the hernia, it caused the beginning of one by a weakening of the muscles and tissues and that the hard labor which he then continued to perform with Steel Construction Company gradually brought the hernia out and therefore both of the defendants are liable to him for compensation in his present disability.
He brought his suit against both alleging the facts much along the lines stated and both defendants resisted the demand, each claiming that plaintiff did not sustain a hernia while he was in its employ. In other words, the defendant Jones and Laughlin Supply Company contended that under the testimony of Dr. Godfrey, it is clear that plaintiff did not sustain such an injury as produced the hernia and that his hernia was brought on by the heavy work he did for Steel Construction Company. This latter company, on the other hand, contended that Dr. Godfrey missed finding the hernia which resulted from the accident plaintiff had on June 10, 1947 while working for Jones and Laughlin Supply Company, and that that company is alone liable to him for compensation.
The trial judge in a written opinion concluded that both the accident of June and the heavy laborious work which plaintiff performed after, had some connection with his present disability and stated that the most fair and equitable decision is to hold them both equally responsible for compensation due him. Upon signing a judgment to that effect, both defendants have taken this appeal.
The question presented, which is one principally of fact, is rather intricate and after a rather thorough research of all the authorities and cases at hand, we have been unable to find any like it. The trial judge cited the case of White v. Taylor,5 So.2d 337, which presents this difference; that there, there were two separate and distinct accidents whilst the employee was working for each of the two defendants and the court held that it took the combination of both accidents to totally disable him at the time he became disabled on the date of the second accident. What makes the present case harder, in our opinion, is that there was but one accident and undoubtedly we have the opinion of a reliable physician, Dr. J. R. Godfrey, that that accident did not produce the hernia. As a matter of fact, counsel representing the defendant Jones and Laughlin Supply Company base their entire case on the testimony of this doctor. That being so we think it becomes necessary for us to carefully analyze what he had to say.
After stating the facts as given to him by the plaintiff concerning the accident he had sustained, Dr. Godfrey says that on examination he found a small, very slight bruise about the size of a silver dime, on the pubic bone just to the left of the midline, and plaintiff told him that that is where the blow was struck. He is definitely of the opinion that from the appearance of the area involved, the blow was on the front of the pubic bone. As, according to him, the blow was struck right at that point he seems to be convinced that it did not involve any damage or injury to the inguinal region which lies just above the lateral, or to the side from where the impact of the blow was. He does not remember if the plaintiff gave any history of having had a feeling of nausea, and if he did, he did not make a note of it. Upon examination for a hernia he found the right external inguinal ring to be small and firm and the left, which was on the side the blow was struck, a little larger; but there was no hernia or *Page 907 
no relaxation present. He states that if he had suspected a hernia he would have instructed the plaintiff to come back for further examination within the next ten days to two weeks.
Dr. Godfrey recalled, after having been reminded by counsel for Jones and Laughlin that plaintiff did return to him for further examination on September 8, after a hernia had been discovered and on that day, on examination, he did find a very small left inguinal hernia, definitely present. He is certain, however in his own mind, that at the first examination, plaintiff had no hernia and that the one he found on September 8, developed subsequently. The doctor stated that the blow which plaintiff sustained could have caused a feeling of nausea but it does not mean that it had produced a hernia.
It seems to us on examining his testimony, that Dr. Godfrey relies a great deal on the fact that the mark to the area on which plaintiff sustained this blow was definitely in the front of the pubic bone and that it did not involve the inguinal area on the left side, which is the side where the hernia exists. Thinking of the matter as laymen, it is hard for us to understand why a blow from the handle of a forty-eight inch Stillson wrench would be restricted to the small area Dr. Godfrey seems to circumscribe. We do not know exactly what the diameter of the end of the handle of such a wrench is but as we visualize it, it must be a pretty large affair and, assuming that it was the end of the handle which struck the plaintiff, it strikes us that the blow must have involved a larger area than a silver dime on the front of the pubic bone, even though that was the only area which showed any objective symptoms of the blow. If the handle struck him lengthwise then it would seem that the area would be that much larger. It is rather significant also that the plaintiff, upon being asked to demonstrate the exact point at which he received the blow pointed to it as being on his left side about two inches to the left of the flap of his pants, and between eight and nine inches below the waistline. All of this tends to weaken Dr. Godfrey's testimony to some extent, and while on this point we might mention further that the statement which plaintiff attributes to the doctor during the examination he made on September 8, to the effect that the doctor who first found the hernia might not also have detected it if plaintiff had not coughed so hard and loud, is rather significant. Dr. Godfrey admits the possibility of a medical man sometimes missing a hernia on examination and whilst he does not admit having made such a statement to the plaintiff, he does not deny it.
Dr. Thomas Y. Gladney examined the plaintiff also on September 8. He stated to Dr. Gladney that he had injured himself while working in June, 1947. Dr. Gladney found a definite enlargement of the left external inguinal ring with definite bulging of the tissues inside the ring when the patient would increase his intra-abdominal pressure by straining or by coughing. The mass could be reduced on relaxation and would recur when pressure was again increased. From this information the doctor's diagnosis was of an inguinal hernia, of a combination in type, both indirect and direct as to classification. This doctor said that it is possible for one to possess a potential hernia and to aggravate the condition by continuous heavy work to such an extent that the hernia will become complete. We are particularly interested in this doctor's testimony about the type of hernia he described as being both direct and indirect as to classification. In other words, as we appreciate it, an indirect hernia is one which may be hard to find because the mass has not yet protruded into the inguinal ring or if it does protrude or could be detected upon straining or coughing, it can be reduced. When it does protrude and the mass can be felt through the ring, it then becomes a direct or a complete hernia and the doctor's testimony that this condition of becoming complete can be produced by hard labor on the part of a man who is suffering from a potential or indirect hernia by doing hard work, is very impressive in this case, especially in view of some of Dr. Godfrey's own testimony.
At one place in his testimony Dr. Godfrey says; "I think that Mr. Brock received a hernia most likely from subsequent *Page 908 
strains after his original visit to me. He had developed a hernia. I think he developed it at work, but as far as I could see, he had no one accident that caused it. At subsequent work he might have been forced continually to do heavy lifting or straining." He then was asked this pertinent question: "Is it possible for a hernia to start developing from a blow in the inguinal ring even though an immediate examination of that region fails to disclose a hernia?" His answer was: "I think it would be possible. Yes Sir." Counsel then pressed him with this question: "Then, is it possible that when you examined Mr. Brock the first time, admitting that it is possible that he did not have a hernia, that having received a blow in that area, that work thereafter of a strenuous character would develop into a hernia in that region?" To this Dr. Godfrey answered: "To re-word the thing, let us say the original blow started a small entering wedge and the strenuous labor later on aggravated it. It could be possible." Finally on this point he was asked this question: "If the patient were to tell you that he continually had pain from the time of a trauma which continued, accompanied by a condition of nausea, would you say that the hernia was recent or that it had its inception at the time of the original trauma?" Here he answered: "If the patient were to be nauseated and were to hurt in that region from the time the blow was struck, you would think that there was a connection between the two."
All of this indicates that Dr. Godfrey relented to some extent on his rather positive testimony at the beginning that this plaintiff had no hernia when he first examined him in June, 1947, and that the injury he sustained then had no connection with his present condition. The answer quoted last and given to a question which we find to be based on a state of facts shown to exist, is a form of admission on his part that there might be a connection between the injury and the hernia which presently exists. Then when we consider another of his statements in which he "rewords" the thing and says that it could be possible that the original blow started "a small entering wedge and that the strenuous labor later aggravated it" we say that that strongly favors the plaintiff's case.
We conclude that there is sufficient evidence to justify the holding of the trial judge to the effect that plaintiff's present disability is caused by a hernia which resulted from a combination of both the injury he sustained while working for Jones and Laughlin Company and which became aggravated by the hard laborous work he continued to perform while subsequently employed by the Steel Construction Company. If there is any doubt whatever involved in arriving at a solution of the question, that doubt, by the liberal interpretation of the Workmen's Compensation Act, Act No. 20 of 1914, As Amended, has to be resolved in favor of the injured employee. We are unable to say that the trial judge erred in his appreciation of the testimony and in deciding as he did, to hold both defendants equally responsible to the plaintiff.
For these reasons the judgment appealed from is affirmed at the costs of the defendants, appellants herein.