52 So.2d 300 (1951)
STANSBURY
v.
NATIONAL AUTO. & CAS. INS. CO. OF LOS ANGELES, CAL.
STANSBURY
v.
OCEAN ACCIDENT & GUARANTEE CORP., Ltd.
No. 3385.
Court of Appeal of Louisiana, First Circuit.
April 30, 1951.
*301 St. Clair Adams & Son, New Orleans, for appellant.
Blanchard & Blanchard, Donaldsonville, for appellees.
DORE, Judge.
These are companion cases in which plaintiff seeks to recover compensation from two insurers of the same employer, on the ground that he suffered two separate accidents. The first suit was filed on May 29, 1949 against National Automobile & Casualty Insurance Company of Los Angeles, California, who provided compensation insurance for plaintiff's employer on June 4, 1948, the date of the first accident. The second suit was filed on December 20, 1949 against Ocean (Accident) & Guarantee Corporation, Ltd., the insurer of plaintiff's *302 employer in May, 1949, when the second alleged accident occurred. The cases were consolidated for trial and, for convenience, will be disposed of together here.
Prior to June 4, 1948 plaintiff was employed as platform foreman by Morgan City Frozen Foods Co., Inc., earning $45.00 per week. The nature of the work brought him within the coverage of the Workmen's Compensation Statute, LSA-RS 23:1021 et seq. On June 4, 1948, while he was acting within the course and scope of his employment, a tank of shrimp fell on plaintiff's left leg causing a break just above the knee. After three days in the Morgan City General Hospital plaintiff was carried to Oschner's Clinic in New Orleans, where he remained about four weeks. For the first two weeks his leg was in traction; on June 22nd a plate and screws were put in the leg and a cast applied. He wore casts up until December 2, 1948, when a brace was fitted on the injured leg, which kept his left foot off the ground and supported the leg from the toes to the hips. With this brace he "became ambulatory", and he was instructed in exercises designed to loosen up the knee. He continued going to the clinic about once a month until April 4 or May 10, 1949, the date of his last trip being uncertain. On December 17, 1948, although he had only recently been put in the leg brace, at the request of his employer plaintiff went back to the same job and at the same pay. It was understood at that time, however, that plaintiff would not be able to do as much work as he had previously done; and a cot was to be provided for him to rest on. For the next five and one-half months plaintiff continually wore the leg brace, and returned periodically to the Clinic for examinations. A few days before June 4, 1949, while plaintiff was pushing a "buggy" loaded with 750 pounds of shrimp, according to plaintiff's testimony he felt his injured leg "give way" and it began hurting him more than usual. X-rays were made a week later which showed a re-fracture of the previous injury and that the steel plate inserted in the leg had broken in two.
On the day of the trial the District Judge, handing down written reasons, held the National Automobile & Casualty Insurance Company liable for compensation at the rate of $20.00 per week for not more than 400 weeks, plus $500.00 for medical expenses, subject to a credit for 52 weeks representing the period when compensation was paid (from June 4, 1948 to December 18, 1948) and the additional period from December 18, 1948 to June 4, 1949 when plaintiff was employed at his full salary. And, concluding that plaintiff had not proved that the second injury occurred on the job, the trial judge dismissed the suit against Ocean Accident & Guarantee Corporation, Ltd. From this judgment of dismissal plaintiff appealed devolutively; from the judgment against it in the first suit the National Automobile & Casualty Insurance Company appealed suspensively.
It is not hard to agree with the trial judge that plaintiff was totally disabled by the accident of June 4, 1948 and that the National Automobile & Casualty Insurance Company is liable for compensation at the rate of $20.00 per week for the period of disability, not to exceed four hundred weeks. Although plaintiff returned to work in December, 1948 with the same title and at the same salary as before, it was understood by plaintiff, by Mr. Santos, his employer, and by L. D. Turner, Chief engineer at the plant, that plaintiff was to do less work than he had previously done; and Mr. Santos agreed to provide a cot at the plant so plaintiff could rest during working hours. Although plaintiff's title was platform foreman he ordinarily was expected to help load trucks, push buggies around, clean up, check goods in and out, etc. When plaintiff returned to work it was, according to Santos, because Santos "was needing him very much to check out the goods"; and plaintiff was not expected to do the heavy work he had previously done. The fact was that plaintiff's knee was still, his leg was in a brace, and he could not do any hard work without suffering pain in his leg.
It is well established in our jurisprudence that when an employee cannot perform his customary and usual duties without suffering pain, hardship and discomfort he is considered totally disabled. See Yarbrough v. Great American Indemnity *303 Co., La.App., 159 So. 438; Stieffel v. Valentine Sugars, 188 La. 1091, 179 So. 6; Lee v. International Paper Co., La.App., 16 So.2d 679.
Although plaintiff was called back to work by his employer for the purpose of performing the lighter part of his usual duties, plaintiff did in fact from time to time perform or try to perform some of the heavier work too, in spite of the condition of his leg. And it was while he was trying to push a "buggy" loaded with 750 pounds of shrimp that the second fracture occurred. For this reason it was at first felt that the liability of National Automobile & Casualty Insurance Co. of Los Angeles should be limited to the period in which plaintiff's injury could normally have been expected to heal, in accordance with the rule found in 71 Corpus Juris, Workmen's Compensation, Sec. 393(d), to-wit: "It has been said that tribunals administering compensation acts should take care to guard against claims arising from malingering due to the employee's own conduct, and where claimants do increase or continue disability when it might have been averted, the disability is not to be charged to the accident but to their unreasonable conduct, as a separate and independent injury or cause."
This rule has been applied several times in Louisiana. See Savin v. T. Smith & Sons, La.App., 143 So. 728; Costello v. French Market Ice Co., La.App., 159 So. 466; O'Niel v. M. W. Kellogg Co., La.App., 190 So. 182, 185. But a close examination of the voluminous medical reports in the record shows that that rule is not applicable here for the reason that at all times plaintiff was following his physicians' instructions and recommendations. On October 11, 1948 Dr. Caldwell instructed plaintiff to begin walking on crutches, although the broken leg was still in a cast. On December 6, 1948 Dr. Morris stated that plaintiff had "become ambulatory" in the brace, and plaintiff was instructed to exercises to loosen up the knee. On March 12, 1949 the brace was lowered so plaintiff could bear additional weight and he was instructed to increase weight bearing. On April 13, 1949 Dr. Morris stated that plaintiff had been allowed additional activity over the past two months and that he could probably discard the brace within the next 8 to 10 weeks. So it cannot be said that in trying to perform the duties of his job plaintiff was uncooperative in so far as following his medical advice was concerned.
The trial court dismissed plaintiff's suit against Ocean Accident & Guarantee Corporation, Ltd. because of a feeling that plaintiff had not discharged the burden of proving that the second fracture occurred on the job. The judge said, "It could easily be that the fracture occurred at other places or time than during plaintiff's employment." But in making this statement the judge was getting into the field of conjecture and speculation, without there being anything in the record to justify his so doing. Plaintiff stated to an insurance adjuster shortly after his second accident, and then testified at the trial that his leg "cracked" or "gave way" as he was pushing a buggy loaded with shrimp. Though he did not report an accident at the time this is not strange because he had frequently experienced pain in his leg while on the job and he said the pain on this occasion was not too great. His leg was supported in a brace so, of course, he could not experience the full effect of the second fracture immediately. Then too, the record is abundant with evidence showing that plaintiff was reluctant to complain or seek sympathy. In addition to this, the record is barren of any testimony conflicting with plaintiff. His acquaintances and fellow workers indicated a high regard for his dependability and integrity; and we find no reason to disbelieve him. In fact, Mr. Santos, plaintiff's employer, apparently affirmed plaintiff's testimony as is seen by the following:
"Q. Did he have a second injury after he returned to his work? A. He complained. After he came back he complained about his leg. It hurt and he went to the doctor and they found that he had another break, the same break, the pin was broken.
"Q. Did that happen while he was working for you? A. Yes, I guess it did."
While an appellate court is always reluctant to reverse the trial court on questions of fact, nevertheless this is one instance when it appears to be necessary.
*304 We feel that all the evidence leads inescapably to the conclusion that plaintiff's second fracture did occur while plaintiff was on the job. Therefore, the judgment dismissing the suit against Ocean Accident & Guarantee Corp., Ltd., must be reversed.
The next matter for decision is that of allocation of liability as between the two defendants. In White v. Taylor, La.App., 5 So.2d 337 (CA-2, 1941), the court said that where a first injury did not cause total disability but a second injury two days later while working for another employer, combined with the first injury, did totally disable the employee, it was proper to hold both employers and both insurers liable in solido. For a somewhat similar situation and similar decision see Brock v. Jones & Laughlin Supply Co., La. App., 39 So.2d 904 (CA-1, 1949). The present case, however, is different from those, in that in the present case the plaintiff by reason of the first accident was rendered totally incapable of performing his usual duties and within the compensation statute was totally disabled; when he was called out for lighter work a second accident occurred that rendered him totally and permanently incapable of performing even that work.
Likewise the case of Whitfield v. Barber Bros. Const. Co., La.App., 10 So.2d 393 (CA-1, 1942) has no application here. There the plaintiff had previously suffered a hernia and had been given $1,300.00 in settlement of a claim for total and permanent disability. On a later job plaintiff received a blow in the stomach and he claimed that the accident aggravated his existing hernia so as to cause total and permanent disability. The court said that after having once collected total disability benefits for a hernia the party could not again recover total and permanent disability for the same hernia.
Without going into the merits of that decision, it is sufficient to point out a valid distinction between that situation and the present one. A broken leg will normally heal in the course of time so as to allow the patient eventually to return to his normal condition, while a hernia will normally grow progressively worse unless a successful operation is performed,  which apparently had not been done in the Whitfield case.
Our conclusion is that the plaintiff, Norman Stansbury, has suffered two accidents, a year apart, each of which rendered him totally disabled from performing his same job again.
In the second suit, plaintiff prays for $500.00 for medical expenses. Since the second accident plaintiff has been treated at Charity Hospital in New Orleans, and has not had to pay for his treatment there. However, as the law of this state gives Charity Hospital the right to charge and collect for their services in compensation cases, Act No. 126 of 1924, as amended by Act No. 29 of 1928, Darts' Statutes, Sec. 1059, LSA-RS 46:13, and as a reasonable fee for plaintiff's medical services following his second injury would exceed the $500.00 allowed by statute, he should be awarded that sum in the judgment against Ocean Accident & Guarantee, Corporation, Ltd.
For the reasons set out herein, the judgment in the suit against National Automobile & Casualty Insurance Company of Los Angeles, California, will be amended, and as amended it will be affirmed. The judgment in the suit against Ocean Accident & Guarantee Corporation, Ltd., will be reversed, and judgment will be rendered awarding plaintiff compensation at the rate of $29.25 per week, being 65% of plaintiff's weekly wage of $45.00, for not exceeding four hundred weeks, from June 4, 1949, plus $500.00 for medical expenses.
Our compensation act does not authorize payments in excess of the specified maximum of $30.00 per week. So, since the last 348 weeks of liability on the part of National Automobile & Casualty Insurance Company will be running concurrently with the first 348 weeks of liability on the part of Ocean Accident & Guarantee Corporation, Ltd., and since the first company is liable in accordance with the $20.00 maximum in effect at the time of the first accident while the second company is liable under the increased maximum rate, it is ordered that they pro-rate their payments *305 for this 348-week period with 2/5ths of plaintiff $29.25 per week being paid by National Automobile & Casualty Insurance Company and 3/5ths being paid by Ocean Accident & Guarantee Corporation, Ltd.
Separate decrees will be rendered in each suit in accordance herewith.