DORÉ, Judge.
David Estilette sued to recover workmen’s compensation, based on total and permanent disability, for injuries received on November 5, 1950 during the course of his employment as manager of the McBride Funeral Home at Church Point. His suit was against only the compensation insurer of the Funeral Home. After trial on the merits the District Court found that plaintiff was totally and permanently disabled and on January 24, 1952 awarded him compensation at the rate of $28.50 per week for 400 weeks, subject to a credit of $470.25 for compensation already paid. Defendant applied for a rehearing on the ground, mainly, that plaintiff had purchased the McBride Funeral Home and his claim for compensation was wiped out by confusion pursuant to LSA-Civil Code Article 2217. A rehearing was granted after which, on June 5, 1952, the trial court again rendered the same judgment in favor of plaintiff with an additional provision ordering defendant to pay all medical expenses up to $500.
A suspensive appeal by defendant was dismissed because of an irregularity in the appeal. La.App., 61 So.2d 242. The case is now before this court on a devolutive appeal.
On November 5, 1950 while plaintiff was driving an ambulance on a call in the course of his employment he was involved in an automobile accident and suffered a crushing injury to the chest with fractures of the left second, third, fourth and fifth ribs, fractures of the sternum or breast bone in two places, fractures of the upper alveolar process, and loss of some teeth. He spent thirteen days in the hospital, and after apparently good progress in the way of recovery was authorized by his doctor on December 2, 1950 to resume light work, which he did.' He was examined by the doctor again on February 28, 1951 at which time he still coftlplained of pain over the upper left chest and sternum. On March 19, 1951 the doctor told him to increase the amount of work he was doing.
As manager of the funeral home plaintiff had one man working under him (Elton Estilette), and it was part of the regular duty of plaintiff to drive the ambulance, assist in carrying patients and bodies, receiving and lifting caskets for storage in the storeroonj, and do other things requiring heavy physical exertion. In addition to their duties in the funeral home, plaintiff and Elton Estilette would, when the funeral business was slack, go to a garage next door which was owned by the same McBride who owned the funeral home and help out at the garage.
After being told by the doctor on March 19, 1951 to increase the amount of work he was doing, plaintiff began helping again with the caskets and other heavy work. But on April 4, 1951 while helping lift a casket he strained himself and the pain in his chest got worse. On April 6th plaintiff again went, to Dr. D. B. Williams, who had been treating him, and the doctor found plaintiff suffering pain to the left of the sternum and found “motion in the rib fragments”. Later that month the doctor recommended “surgical fixation of the movable fragments”. The same doctor saw plaintiff at other times up to the date of the trial. On the day of the trial Dr. Williams wrote a report, which was put in evidence, stating in part:
“One rib fragment is still movable on examination, and obviously there was considerable initial trauma to displace this fragment in such a position that it has not united. This is the rib fragment that I advised surgery for some time ago. The patient complains of pain on lifting or using his arms in heavy work. This seems a justifiable complaint because of the intimate attachment of the muscles (chiefly the-pectoralis major in this case) of the *880 shoulder to the-chest'wall. There is no disability associated with * the left arm.
“As a rule rib fráctures heal with no residual disability, however, Occasionally, as in this case there is continued pain. There is sufficient physical and x-ray findings to justify the patient’s complaints of pain. The patient is apparently able to perform duties of his previous employment other than strenous activity in lifting ■ and moving heavy objects.”
About the middle of 1951 plaintiff had gone also to Dr. William L. Zink who, on August 3, 1951 wrote a report which is in evidence and which lines-up pretty closely with-the report by Dr. Williams. He found that the rib fracture in healing had produced a “false joint” which caused the chest wall to no longer be a fixed cage but left it movable by exertion, whether physical or coughing or simply deep respiration, which abnormal movement caused pain and discomfort. He also recommended operative reduction and fixation of the movable fragments.
According to plaintiff’s testimony his chest burns all the time, his left chest swells at times, he can’t lift caskets, concrete vault covers, or anything else weighing over fifty pounds without serious pain, and he takes aspirin and Stan-back frequently to relieve his pain. His wife bears out liis testimony about constant pain.' She says he doesn’t sleep well at night, that he gets out of breath quickly from walking, and that his breathing at night causes his “floating rib” to rub against the others and rattle so that it even wakes her up at times.
While plaintiff does still go to the funeral home, except on days when his pain is too bad, and he does still supervise the work at the funeral home, yet he is unable now to do many of the things that previously. constituted an important part of his employment. It is well established in our jurisprudence that an employee whose injuries prevent him . frpm performing his customary and usual duties without suffering pain, hardship and discomfort is totally disabled within the meaning of the compensation act, LSA-R.S. 23:1 et seq. See Stansbury v. National Auto. & Cas. Ins. Co., La.App., 52 So.2d 300; Stieffel v. Valentine Sugars, 188 La. 1091, 179 So. 6; Yarbrough v. Great American Ind. Co., La. App., 159 So. 438; Lee v. International Paper Co., La.App., 16 So.2d 679.
Defendant has emphasized the fact that the funeral home under plaintiff’s present management is rendering the same service it previously rendered. However, plaintiff himself is not doing the same work now that he used to do. Further, he now has two men working under him regularly who do the heavy work and lifting, while previously he had only' one man under- him and he himself- helped with the heavy work. Under the facts here we agree with the District Judge that plaintiff is now permanently and totally disabled.
Defendant has argued that before his injury plaintiff was manager of the funeral home and he now still serves as manager of the funeral’home; that his present disability is only partial,' in that he can still do the supervisory work and that it is only the labor and lifting that he cannot do. What is overlooked in this argument is that plaintiff is no longer employed to serve as manager' of the funeral home; he bought the business in 1951, and he is now an entrepreneur and not an employee. He .now employs an extra man to do the laborious work that used to be part of his job. It is obvious as we view plaintiff’s condition that he could not now hifie himself out to do the work he was doing in 1950, because he is not physically able to do it.
Our compensation law has never required that a man be completely helpless before he can be adjudged.totally and permanently disabled. The criterion is whether he can go back to the same job or to a job similar to what he was doing before. This, the plaintiff cannot do. ' Therefore the case of Barentine v. W. R. Aldrich & Co., La.App., 20 So.2d 635, and others cited by defendant dealing with determining the amount of compensation due in cases of partial disability can have no application here.
This case would present little difficulty except for the fact that about March 1, *881 1951 plaintiff acquired ownership of the funeral business where he was employed at the time of his injury. According to plaintiff’s testimony he borrowed money and bought the business on March 1st. There is in the record a copy of a cash deed-by which plaintiff bought from' Mr. and Mrs. P. D. McBride on March 6, 1951 all the caskets, clothes, embalming fliiids, candles and complete stock contained, in the McBride Funeral Home for the stated cash consideration of $1,200. Also on March 6th, the record shows', plaintiff leased from the McBrides the building and land occur pied by the business. Some time after March 1st the name of the business was changed to “Estilette Funeral Home”. Then on October -30, 1951 Estilette bought the building and land.
From this transfer of ownership defendant has built two new. arguments. First, defendant contends that plaintiff’s present disability was not caused by the accident of November 5, 1950 but was caused by plaintiff’s straining and exertion on April 4, 1951, at which time plaintiff himself was owner of the business. But we see no merit in this. While plaintiff had made apparently satisfactory recovery after the accident in 1950 so that the doctor felt he was justified in first instructing him to resume light work and then later to increase the amount of work he was doing, actually plaintiff’s recovery had not been as full as he and the doctor thought. Proof of this is seen in the subsequent events, to wit, that while obeying the doctor’s instructions and trying to do work customary in his employment he aggravated the area of the injury and caused definite disability again which, the medical evidence indicates, will not heal by natural processes. Plaintiff’s first accident on November 5, 1950 was the sine qua non. Without it there would have been no difficulty resulting from the lifting he did on April 4, 1951.
It is our opinion, as it was the opinion of the district judge, that plaintiff .was disabled by the accident in November, 1950, that he never recovered enough to be able to do his same work again, and that his present disability is the direct result of that accident and the injuries sustained therein.
Defendant also argues that when plaintiff bought the equipment and took over the operation of the funeral home in March, 1951, without the- provisions of the Bulk Sales Act being complied with, the qualities of debtor and creditor were united in him and his claim for compensation was extinguished by confusion, in accordance with LSA-Civil Code Article 2217. That article states:
“When the qualities of debtor and creditor are united in the same person, there arises a confusion of right, which .extinguishes the obligation.” '
However, an examination of the instrument by which Estilette purchased the merchandise and- equipment in , the funeral home, of the lease he' took on the premises, and. of the deed by. which he subsequently bought the premises; shows that he did not in any , of those acts assume any of the debts or obligations of .McBride or of the business. Therefore, if he took on any obligation' for the debts'of the business it was only by virtue of the Bulk Sales Act. That Act provides, in LSA-R.S. 9:2963, as follows: ,
“Any person to whom any of the property mentioned in R.S. 9:2961 shall be so transferred, who shall pay any part of the consideration r therefor to such transferor * * * .without first having demanded and received from the transferor * * * the statement provided for in R.S. 9:2962 B, verified as" therein provided, and without paying or seeing to it that the 'purchase money * * * is applied to the payment of the bona fide claims of the creditors of the transferor pro rata according to the dignity of their several claims * * * shall at the suit of any creditor, be held liáble to'all the creditors of the transferor as receiver for the fair value of all the property so transferred to him. * * * ” [Italics supplied.]
According to those provisions, the effect of failure to comply with the Bulk Sales *882 Act would be to make it possible for creditors of McBride to proceed against Estilette and hold him liable as receiver of the purchased goods, up to the amount of the value of the purchased goods. This would not make Estilette personally liable for all the debts of his vendor, however, nor, in fact, does it make him personally liable for any of his vendor’s debts. It only makes him liable as receiver of the goods, and up to the fair value of the goods.
According to that Act, and the facts in this case, Estilette, the plaintiff, not having complied with the Act, became the receiver of the movables purchased to the amount of $1,200. In other words, he, as receiver, became indebted unto the creditors of the McBride Funeral Home to the amount of $1,200. As far as the record shows, he was the only creditor of the said Funeral Home, thereby becoming both creditor and débtor. Accordingly, under Article 2217 supra, confusion took place to that amount, and his compensation claim should be further reduced by that amount.
In the judgment rendered by the trial judge after the rehearing the defendant was ordered to pay all medical expenses to the extent of $500. This provision was not ■ in the original judgment and it should not have been in the second judgment, for the parties stipulated that defendant had already paid $500 in medical expenses. The record does not show any reason why the defendant should pay more.
For these reasons, the judgment appealed from is amended by the allowance of a further credit of $1,200 to his claim.for compensation and the disallowance of $500 for medical expenses and as thus amended the judgment is affirmed, the plaintiff to pay the costs of this appeal and all other costs to be paid by defendant.