307 So.2d 313 (1975)
Wilfred OWENS, Plaintiff-Appellant-Relator,
v.
LIBERTY MUTUAL INSURANCE COMPANY and Heldenbrand, Inc., Defendants-Appellees-Respondents.
No. 55073.
Supreme Court of Louisiana.
January 20, 1975.
Rehearing Denied February 21, 1975.
*314 Roger C. Sellers, Durwood W. Conque, Thompson & Sellers, Abbeville, for plaintiff-appellant-relator.
Jacob D. Landry, Landry, Watkins, Cousin & Bonin, New Iberia, for defendants-appellees-respondents.
TATE, Justice.
The plaintiff Owens sues for workmen's compensation benefits. His claim is based upon the recurrence of a hernia initially caused by accident during his employment with the defendant employer. The case involves an issue of first impression in this court as to the application of a 1968 enactment providing for compensation for initial and recurrent hernia injuries at work.
The trial court had initially dismissed the suit as prescribed. The court of appeal affirmed the dismissal. It reasoned, however, that the suit was timely, since brought within a year of the recurrence; but it held that nevertheless the petition did not state a cause of action because the recurrence did not happen while Owens was working for his initial employer. 296 So.2d 449 (La.App.3d Cir. 1974).
We granted certiorari, 299 So.2d 787 (La.1974), because of the importance of the issue in the interpretation of the hernia provisions, La.R.S. 23:1221(4)(q), which were added to our workmen's compensation statute, La.R.S. 23:1201 et seq., by Act 25, Section 5, of the Extraordinary Session of 1968.

1.
The court of appeal held that the following alleged facts stated no cause of action:
The plaintiff Owens sustained a hernia at work on July 12, 1968. On August 23, 1972, a recurrence of this same hernia was diagnosed, although Owens had no trauma and was not at work for the defendant. The present disabling recurrent hernia resulted from the traumatic incident of July 12, 1968, when Owens had sustained the initial hernia (now recurred) at work for the defendant employer.
Further allegations show that the initial hernia of July 1968 was corrected by surgery, with compensation benefits for disability from it paid until May of 1969. In October of 1969, the first recurrence occurred, surgery was again performed, and compensation was paid through January of 1970. In November of 1971 the second recurrence occurred, the plaintiff again submitted to surgery, and compensation benefits were paid until the middle of April 1972.
The present suit was filed on May 15, 1973, for compensation benefits arising out of the third recurrence, which became manifest on August 23, 1972. The suit is thus filed within one year of the recurrence, but more than one year after the payment of the last compensation benefits (i. e., those for the second recurrence) and more than two years after the initial trauma of July 12, 1968.

2.
The court of appeal properly disregarded as inapplicable to the present proceeding the two-year prescription (sometimes termed peremption) provided by the 1934 amendment to La.R.S. 23:1209[1], insofar *315 as such statutory prescription bars compensation unless suit is brought within two years of the date of the traumatic incident at work. As will be shown, the 1968 provisions set forth an internally complete regulation of the award of compensation in instances where the disability results from a work-connected hernia. Under this self-contained regulation, each recurrence is regarded as a separately compensable hernia, if resulting from the initial work-connected trauma.

3.
The 1968 hernia provisions must be understood in the light of their intended reform of the prior law.
Prior to 1968, an employee disabled by a hernia was entitled to compensation for total and permanent disability (400, later 500, weeks). Sumrall v. J. C. Penney Co., 239 La. 762, 120 So.2d 67 (1960). Furthermore, an employee so disabled was not required to submit to corrective surgery, even though the prospects of success were great, partly because of the 5-10% risk of recurrence. Reed v. Calcasieu Paper Co., 233 La. 747, 98 So.2d 175; Malone, Louisiana Workmen's Compensation Law, Section 234 (1951; 1962 Supp.) and the many decisions cited therein.
The compensation law as thus construed was sometimes criticized, as excusing an employee from ending his disability by relatively simply surgery, despite the minor risk of recurrence. Malone, ibid. In fact, in 1926 the legislature limited compensation to twenty-six weeks after the accident if the employee refused corrective surgery, Act 85 of 1926, Section 8(d)(17); but the provision was soon repealed by Act 242 of 1928.
Under the pre-1968 law, if an employee did submit to surgery and the hernia nevertheless recurred, the compensability of his recurrent disability was governed by the general jurisprudential principles relating to later-manifested disability resulting from an initial work-accident:
The employee was entitled to compensation for the disability resulting from the recurrence, whether the recurrence occurred at work for his employer or elsewhere, such as at home or while at work for a subsequent employer. The accident at work was regarded as the initial cause of the disability, although other causes might have contributed to it. However, by reason of the general prescriptions applicable to compensation suits, see La.R.S. 23:1209 quoted in Footnote 1 above, to be timely the suit had to be filed within one year either (a) of the last compensation payment or (b) of the re-manifestation of the disability (providing that, in the latter or (b) event, the suit be filed within two years after an accident at work).
See: Finley v. Hardware Mutual Insurance Co., 237 La. 214, 110 So.2d 583, 586-587 (1959), discussed by Malone, 20 La.L. Rev. 251-52 (1960); Carlino v. United States F. & G. Co., 196 La. 400, 199 So. 228 (1940) (syllabus 6); Stockstill v. Bituminous Cas. Corp., 144 So.2d 918 (La.App. 4th Cir. 1962), certiorari denied; Fontenot v. Great American Indem. Co., 127 So.2d 822 (La.App.3d Cir. 1961); Estillette v. United States F. & G. Co., 64 So.2d 878 (La.App.1st Cir. 1953); Stansbury v. National Auto. & Cas. Ins. Co., 52 So.2d 300 (La.App.1st Cir. 1951); Manuel v. Travelers Ins. Co., 46 So.2d 319 (La.App.1st Cir. 1950), Comment, 12 La.L.Rev. 73 (1951); Brock v. Jones & Laughlin Supply Co., 39 So.2d 904 (La.App.1st Cir. 1949); White v. Taylor, 5 So.2d 337 (La.App.2d Cir. 1941), certiorari denied.[2] See also Malone, *316 Louisiana Workmen's Compensation Law, Section 233 (1951; 1962 Supp.).

4.
The 1968 amendment added subsection (q) to section (4) of La.R.S. 23:1221[3]. Sections (1), (2), and (3) provide for the benefits due for disabilitytemporary total, permanent total, and partial, respectively. Section (4) provides a schedule of compensation awards for specific losses, including hernia since 1968.
The thrust of the 1968 provisions is to require an employee disabled by a hernia which results from a work-injury to submit to surgery. The penalty for his failure to accept surgery, if not reasonably excused, is the limitation of his weekly compensation to twenty-six weeks.
Nevertheless, to protect the employee from the minor but real risk of recurrence, the 1968 statute further provides at (4)(q)(4): "Recurrence of the hernia following surgery shall be considered as a separate hernia, and the provisions and limitations of this section shall apply." (Italics ours.) The intent thus manifested, for purposes of the self-contained provisions of the section, is to treat each hernia as separately compensable, as if caused by accident on the date of recurrence.
In the sparse jurisprudence of the intermediate courts interpreting the act, only the decision presently reviewed and that in LeBleu v. Phoenix of Hartford Ins. Co., 254 So.2d 621 (La.App.3d Cir. 1971)[4] have touched on the legal characterization of a recurrence as a separate hernia.
LeBleu correctly noted that the recurrence could be compensable by the first employer as a separate hernia, if causally related to the initial work-caused hernia, even though the recurrence resulted from an incident while at work for another employer. In the present case, the intermediate court correctly held that prescription began to run from the date of the recurrence rather than from the date of the initial accident at work, insofar as the claim for compensation benefits arising out of the recurrence.
However, the intermediate decision in the instant case fell into error in holding that, to be compensable, the recurrence must result from an accident at work on the date of the recurrence. Our intermediate brethren reached this conclusion by noting that (4)(q)(4) requires that the recurrence, although regarded as a separate hernia, be regulated by the other "provisions *317 and limitations of this section." Our brethren reasoned that the requirement of (4)(q)(1) that the "hernia resulted from injury by accident arising out of and in the course and scope of employment" means that the recurrence also must result at work while still employed by the defendant employer.
Under the jurisprudence previously cited, however, a recurrence or aggravation of a hernia initially sustained at work is regarded as compensable and as resulting from injury by accident during the course and scope of the employment, even if by the time of the recurrence the employee had left the original employment. See, e. g., Brock v. Jones & Laughlin Supply Co., 39 So.2d 904 (La.App.1st Cir. 1949). That is, the initial accident at work is the factual and legal cause of the subsequent recurrence and the disability consequent to it, even though the recurrence occurs away from the premises and while the claimant is no longer employed by the master for whom he worked at the time of the initial hernia.
This principle is here applicable. Thus, the recurrence of the hernia in 1972 is compensable as a separate hernia, as provided by (4)(q)(4); and prescriptive periods as to compensation for this recurrence commence with this 1972 date. However, a legal cause of this recurrence is regarded, as formerly, as the initial injury (hernia) at workso that the recurrent hernia results "from injury by accident arising out of and in the course and scope of employment", as required by (4)(q)(1).
The employer is protected against abuse by the requirements of (q)(1) of prompt report and treatment of the recurrence; but, on the other hand, the employee, who by the 1968 amendment was obliged to submit to surgery and take the risk of recurrence, is protected against such minor but appreciable risk by (4)(q)(4)'s allowance to him of compensation for disability resulting from the recurrence. As compared with the pre-1968 hernia accident, the employer by surgery now terminates his liability as to 19 out of 20 hernia disabilitiesbut we can find no intention of the 1968 legislation to exempt him from liability for the recurrent hernia just because the recurrence occurs after the workman has left the work premises or the employment.

Decree
For the foregoing reasons, the judgments of the previous courts dismissing this suit are reversed, and the case is remanded to the district court for further proceedings consistent with this opinion. All costs of the appeal and of this review are assessed against the defendants; all other costs are to await final termination of these proceedings.
Reversed and remanded.
NOTES
[1] La.R.S. 23:1209 provides:

"In case of personal injury (including death resulting therefrom) all claims for payments shall be forever barred unless within one year after the accident or death the parties have agreed upon the payments to be made under this Chapter or unless within one year after the accident proceedings have been begun as provided in Parts III and IV of this Chapter. Where such payments have been made in any case, the limitation shall not take effect until the expiration of one year from the time of making the last payment. Also, where the injury does not result at the time of, or develop immediately after the accident, the limitation shall not take effect until the expiration of one year from the time the injury develops, but in all such cases the claim for payment shall be forever barred unless the proceedings have been begun within two years from the date of the accident." (The italicized sentence was added by Act 29 of 1934.)
[2] If the recurrence of the hernia occurred at work, it could be regarded as a second accident. See Carlino, cited in text. If the recurrence occurred after the employee left the job, it was compensable as a later manifestation or remanifestation of an injury resulting from the prior accident at work. See Brock, cited in text.
[3] La.R.S. 23:1221 provides:

"Compensation shall be paid under this Chapter in accordance with the following schedule of payments: * * *
"(4) In the following cases the compensation shall be as follows: * * *
"(q)(1) In all claims for inguinal hernia, it must be established by a preponderance of the evidence that the hernia resulted from injury by accident arising out of and in the course and scope of employment, that the accident was reported promptly to the employer, and that the employee was attended by a licensed physician within thirty days thereafter.
"(2) If the employee submits to treatment, including surgery, recommended by a competent physician or surgeon, the employer shall pay compensation benefits as elsewhere fixed by this Chapter.
"(3) If the employee refuses to submit to such recommended treatment, including surgery, and establishes by a preponderance of the evidence that his refusal is based upon his conscientious religious objection thereto or that such recommended treatment, including surgery, involves an unusual and serious danger to him, the employer shall pay compensation benefits as elsewhere fixed by this Chapter. In all other cases of the employee's refusal to submit to such recommended treatment, including surgery, the employer shall provide all necessary first aid and medical treatment and supply the necessary truss, support, or other mechanical appliance at a total cost not in excess of five hundred dollars. In addition, the employer shall pay compensation for a period not to exceed twenty-six weeks.
"(4) Recurrence of the hernia following surgery shall be considered as a separate hernia, and the provisions and limitations of this section shall apply."
[4] It is of some interest that this recent decision cites medical testimony that about 4% of surgical repairs of hernias result in recurrences.