hYELVERTON, J.
Christopher Page appeals a workers’ compensation judgment which found that *786 bis claim for benefits had prescribed. He appeals the judgment arguing that his claim has not prescribed pursuant to Louisiana Revised Statute 23:1221(4)(r)(iv) because he suffered the recurrence of a hernia following surgery. We agree with Page, find that there was a recurrence of the hernia, that the suit was timely filed, and remand for further proceedings.
FACTS
Page was employed as a laborer by Abi-gails, a wholesale/imported goods business in Alexandria. His petition alleged an injury while lifting at work on December 31, 1998. A couple of days later, he went to the Huey P. Long emergency room in Pineville, where he was diagnosed with an inguinal hernia.
Page continued to be treated at both the Huey P. Long emergency room and outpatient clinic for several months. Surgery to repair the right inguinal hernia was performed on June 10, 1999. As of July 1, 1999, the hernia had healed. On November 1,1999, Page began experiencing problems with the hernia site. This is when he argues that he suffered a recurrence which would have interrupted prescription.
PRESCRIPTION
The prescriptive periods applicable to the filing of workers’ compensation claims are found in Louisiana Revised Statute 23:1209. This section provides that claims are barred unless filed (1) within one year from the date of the accident; (2) |?pne year from the last compensation payment for total disability or three years from the last payment for partial disability; or (3) one year from the time the injury develops, if not immediately manifest, but no more than two years after the accident.
Page alleges that he was injured on December 31, 1998, but he did not file suit until August 11, 2000. The petition indicates that Page’s action is prescribed because the claim was filed more than one year after that accident. However, Page argues that his action had not prescribed because there was a “recurrence” of the hernia on November 11, 1999. If there is a recurrence, it causes the commencement of a new prescriptive period pursuant to Louisiana Revised Statute 23:1221(4)(r)(iv).
Louisiana Revised Statute 23:1221(4)(r)(iv) provides “Recurrence of the hernia following surgery shall be considered as a separate hernia and the provisions and limitations of this Subparagraph shall apply.” The leading case on the prescriptive period associated with the recurrence of a hernia is Owens v. Liberty Mut. Ins. Co., 307 So.2d 313 (La.1975). Discussing the 1968 legislative changes regarding a hernia injury, the supreme court noted that:
The court of appeal properly disregarded as inapplicable to the present proceeding the two-year prescription (sometimes termed peremption) provided by the 1934 amendment to La.R.S. 23:1209, insofar as such statutory prescription bars compensation unless suit is brought within two years of the date of the traumatic incident at work. As will be shown, the 1968 provisions set forth an internally complete regulation of the award of compensation in instances where the disability results from a work-connected hernia. Under this self-contained regulation, each recurrence is regarded as a separately com-pensable hernia, if resulting from the initial work-connected trauma.
Id. at 314-15 (footnote omitted) (emphasis supplied).
Abigails argues that Page cannot have the benefit of the “recurrence” section because he was never paid workers’ compensation benefits nor did he file a claim for *787 lathe initial hernia, in effect putting the employer on notice of the claim. Self-contained section (4)(r) does not require either of these actions in order for a claimant to assert a claim for the recurrence of a hernia. We are aware that there are certain elements a claimant must prove by a preponderance of the evidence to establish entitlement to benefits for a hernia sustained at work: (1) the hernia resulted from injury by accident arising out of and in the course and scope of employment; (2) the accident was reported promptly to the employer; and (3) the employee was attended by a licensed physician within thirty days thereafter. La.R.S. 23:1221(4)(r)(i). However, these are the facts that claimant must establish to prove his entitlement to compensation for a hernia suffered on the job. These proof requirements have nothing to do with whether the claimant’s action has prescribed; they relate to whether claimant can establish entitlement to benefits for the hernia.
In the case of a recurrence of a hernia, prescription runs from the date of the recurrence rather than from the date of the initial accident at work, insofar as the claim for compensation benefits arising out of the recurrence. Owens, 307 So.2d 313. The recurrence is regarded a separate injury with the initial accident at work as “the factual and legal cause of the subsequent recurrence and the disability consequent to it .... so that the recurrent hernia results ‘from injury by accident arising out of and in the course and scope of employment....’” Id. at 317. While the claim may have prescribed for benefits for the initial hernia, a new prescriptive period is applicable to the claim for benefits for the recurrence of the hernia. Page has alleged he suffered a recurrence of the hernia on November 11, 1999, and filed a claim for benefits within one year of that date on August 11, 2000, so his action for benefits for a recurrence of the hernia would not have prescribed.
I/The trial court found that Page did not suffer a recurrence of his previous hernia. The trial court in oral reasons stated:
So we’re not dealing with a situation where there is ever a recurrence of— where there was a hernia operation, recovery from a hernia operation and the recurrence of a hernia. We’re dealing with a situation where there was a hernia, disability developing in June of 1999 and continuing thereafter, maybe through today’s date, the Court is not sure. And it’s simply a single continuum of events that Mr. Page never fully recovered from the initial surgery, having received a staph infection of some kind causing his wound to never heal.
Therefore, a resolution of whether Page’s action has prescribed hinges upon the meaning of “recurrence” in the self-contained hernia provision.
The standard of appellate review on a question of law is simply a decision as to whether the lower court’s decision is legally correct or incorrect. Huddleston v. Farmers-Merchants Bank & Trust, 00-640 (La.App. 3 Cir. 11/02/00); 772 So.2d 356. If the decision by the trial court was based on its erroneous application of law, rather than on a valid exercise of discretion, the decision is not entitled to deference by the reviewing court. Id. It is, therefore, necessary to review the rules regarding statutory interpretation to determine whether the trial court correctly determined the meaning of a “recurrence.”
“Legislation is a solemn expression of legislative will.” La.Civ.Code art. 2. “[T]herefore, interpretation of a law is primarily the search for the Legislature’s intent.” O’Regan v. Preferred Enterprises, Inc., 98-1602, p. 4 (La.3/17/00); 758 So.2d 124, 128. “The starting point for *788 interpretation of any statute is the language of the statute itself.” Id. (citing Touchard v. Williams, 617 So.2d 885 (La.1993)). When a law is clear and unambiguous and its application does not lead to absurd consequences, no further interpretation is necessary and the law should be applied as written. La.Civ.Code art. 9. Nevertheless, when the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law. La.Civ.Code art. 10; O’Regan, 758 So.2d 124. The meaning of ambiguous words “must be sought by examining the context in which they occur and the text of the law as a whole.” La.Civ.Code art. 12; O’Regan, 758 So.2d 124.
We must also keep in mind that coverage provisions of the Workers’ Compensation Act must be liberally construed. Stelly v. Overhead Door Co. of B.R., 94-569 (La.12/8/94); 646 So.2d 905.
The parties have not cited any Louisiana cases, nor have we found any that have construed the meaning of “recurrence” as found in the hernia provision. “Recurrence” means “to occur again after an interval.” Webster’s ninth new collegiate dictionary 985 (1991). In Crawford v. Tampa Inter-Ocean S.S. Co., Inc., 150 So. 875 (Orl.App.1933), the claimant claimed that a surgical operation to cure his inguinal hernia did not cure his hernia because he continued to suffer thereafter. The doctors testified that although the surgical procedure was successful in all aspects, the hernia recurred within a short while thereafter. The court went on to explain that:
A “recurring hernia” at the same spot, as the word “recurring” signifies, is a return of a former hernia, which, though temporarily arrested by the operation, was one of the small minority of cases in which a successful result did not follow a skillful operation. The original injury received by [claimant] on May 28, 1932, is responsible for his present condition.
Id. at 876.
The Outpatient Clinic records indicate that on July 1, 1999, Page’s hernia had healed, although with difficulty. He was discharged from medical care at that point. | (¡After several months had elapsed, it became necessary for Page to see a doctor, when he began experiencing difficulty with the hernia site. It appears that pus had started draining. from the site about one to two weeks before he went to the emergency room on November 1, 1999. He went to the emergency room over the next couple of months with continuing drainage problems at the hernia repair site.
Page was examined by Dr. Robert Rush on July 17, 2000, with the continuing drainage problems. Dr. Rush reviewed Page’s medical records and noted that he had been released from care. He also observed that a mesh had been used in the hernia repair. A culture and sensitivity of the draining sinus over the hernia scar area revealed a staph infection. Dr. Rush stated that it may be necessary to re-explore the hernia scar and possibly remove the mesh to clear up the staph infection. He referred Page to a surgeon, Dr. David Remedios.
On August 8, 2000, Page was examined by Dr. Remedios. Upon examination Dr. Remedios detected “a right inguinal hernia scar with a sinus at the superior lateral end of the wound, which appears to have purulent material and some hypertrophic granulation tissue.” Dr. Remedios cut out a two-centimeter, knotted piece of what appeared to be an Ethalon suture with knots in it. He had to cauterize the granulation tissue around the sinus area and filled the wound with Provodex. Page went for a follow-up visit on August 30, *789 2000. Dr. Remedios noted that the wound had completely healed, but warned Page that if he did have other sutures, they might react and come out or he might experience further problems along with the wound.
On January 22, 2001, Page was again examined by Dr. Remedios. At that time he had a persistent sinus, draining a greenish fluid. Dr. Remedios opined that Page |7was experiencing a tissue suture reaction with chronic infection. Dr. Remedios recommended surgery to explore the wound and try to remove the foreign body.
We find that Page suffered a recurrence of his hernia on November 1, 1999, and again on January 22, 2001. Prior to both of these times, Page had been released by the doctors with a stable hernia repair. However, he began to suffer problems with his hernia repair at these times. As recognized by the supreme court in Owens, 307 So.2d 313, the purpose of the 1968 hernia provisions was to require an employee disabled by a hernia which results from a work-injury to submit to surgery, which has a great potential for success. However, there is a minor chance that the hernia will recur, so the 1968 law added to its self-contained regulation the language regarding a recurrence of hernia as a separately compensable hernia to insure that the employee’s recurrent disability was covered as a later-manifestation of the original injury. This is because the initial accident at work is regarded as the factual and legal cause of the subsequent recurrence and the disability consequent to it. Id. Naturally, a “recurrence” is not a new injury, but simply another period of incapacitation resulting from a previous injury for which the employer remains liable. Page had recuperated both after his initial surgery and after the suture was removed. However, he began to experience problems that were all associated with the hernia repair. He suffered another period of incapacitation resulting from the original hernia. Page has suffered recurrences of his hernia problem, which are associated with his initial alleged injury at work.
Therefore, we find that Page’s claim for this recurrence, filed on August 8, 2000, was filed within one year of the recurrence on November 1, 1999. The trial court’s judgment maintaining Abigails’ exception of prescription is reversed. The ^exception is overruled. This case is remanded for further proceedings. Cost of this appeal are assessed to Abigails.
REVERSED AND REMANDED.