No. 13,797.

MAYOR AND BOARD OF TRUSTEES OF THE TOWN OF NEW IBERIA VS. NEW IBERIA AND BAYOU CARLIN DRAINAGE DISTRICT, AND PARISH OF IBERIA VS. NEW IBERIA AND BAYOU CARLIN DRAINAGE DISTRICT.— (CONSOLIDATED.)

SYLLABUS.

1. Act No. 33 of 1900, being the latest expression of legislative will upon the subject of drainage within the corporate limits of the town of New Iberia, must be held to control prior legislation, and to vest in the Mayor and Trustees of the town exclusive authority upon that subject.

2. The title of Act 114 of 1900 expresses but one object, but the last section of the act is broader than the title, and, therefore, unconstitutional, but in so far, only, as it undertakes to repeal Act No. 5 of 1899, as an entirety, and does not confine the repeal to so much of said act as is contrary to, or inconsistent with, its own provisions.

3. Article 281 of the Constitution, whilst contemplating that drainage districts shall be established as distinct entities, imposes no restrictions upon the General Assembly in the matter of the selection of the officers by whom the affairs of such districts are to be administered, and the courts can impose none.

A PPEAL from the Nineteenth Judicial District, Parish of Iberia.— Foster, J.

Andrew J. Cammack, for Mayor and Board of Trustees of the Town of New Iberia, Plaintiffs, Appellants.

Anthony N. Muller, District Attorney, for Parish of Iberia, Plaintiff, Appellant.

Broussard, Dulany & Dunbar, for Defendant, Appellee.

The opinion of the court was delivered by

MONROE, J. The plaintiffs in these, consolidated, cases, sued to restrain the Board of Commissioners of the Bayou Carlin Drainage District from holding an election, which had been ordered by them for October 3rd, 1900, to take the sense of the qualified voters of said district upon the question of imposing a special tax for drainage purposes, the Mayor and Board of Trustees of the town of New Iberia claiming that the power is vested in them to order such elections

where the tax is to be imposed upon property within the corporate limits of the town, and the Police Jury claiming that such power is vested in them with respect to taxes to be imposed in the parish, generally. Preliminary injunctions were issued and remained pending until after the date fixed for the election enjoined, so that, although the judgment of the District Court, when rendered, was in favor of the defendants, the immediate purpose of the plaintiffs was accomplished. Whether the particular election in question was held, or was. not held, upon the day appointed, was, however, a matter of small consequence in comparison to that which remains to be settled, i. e.; in which of the litigants is the authority to order elections, contract debt and issue bonds, for drainage purposes, in the Bayou Carlin Drainage District, vested?

## I.

The town of New Iberia was incorporated by special Act No. 16 of 1839, and the Mayor and trustees were authorized to pass such ordinances, not inconsistent with the laws of the State and of the United States, as they might deem proper, in relation, among other things, "to the streets, alleys, highways, etc., therein, and draining, filling up, keeping in order and improving the same," etc. It was also provided, by the same act, that the Police Jury should be authorized to levy taxes upon property in the town "for the purpose of building or repairing the court house, jail, bridge, ferry, or other property" of the parish. But, by Act No. 107, of 1868, the provision last above mentioned was repealed, and it was provided "That, from and after the passage of this act, the Police Jury shall no longer exercise any jurisdiction within the limits of the said town of New Iberia, or impose any tax on persons or property therein, except to impose such special tax as may be required to make or repair the courthouse or jail of said parish." And this provision, of the Act of 1868, excluding the rest of the section of which it formed a part, was included among other amendments to the charter which were adopted by the people of the town in December, 1880, agreeably to the provisions of Act No. 110 of that year, the provisions conferring upon the Mayor and trustees the power to pass ordinances upon the subject of drainage remaining unchanged.

In 1888, the Legislature passed a general statute entitled: "An act authorizing and empowering the Police Juries of the State to divide

their respective parishes into drainage districts, providing for the appointment of commissioners to superintend the said districts, and their duties; for the raising of funds by special tax on the lands in said districts, and the manner in which said tax shall be collected."

By this act, the Police Juries throughout the State were authorized to divide their respective parishes into drainage districts and to appoint for each district three commissioners, who were to hold office during the pleasure of the Police Jury, and who, by the terms of the act, were authorized to submit to the land owners of the district for which they were appointed, at elections to be ordered by them, the question of taxing their property, up to 15 mills, for drainage purposes.

In 1890 (by Act 83) the Act of 1888 was so amended as to withdraw from the commissioners the power to order elections and to vest it in the Police Juries.

It is sufficient for present purposes to say that the Constitution of 1898, of itself, operated no change in the relations which had been established by law between the parish and town authorities. Shortly after its adoption, however, the General Assembly passed Act No. 130, of 1898, being an act amending the original charter of the town of New Iberia and the different amendments thereto, the general tone and effect of which is, to emphasize the exclusion of the Police Jury from the affairs of the town. Act 5, of the called session of 1899, purports to have been adopted to carry into effect Article 281 of the Constitution, but makes no provision for the organization of Boards, or other governing bodies, for drainage districts, and in no manner affects the question here involved. Act No. 12, of 1900, was passed to further carry into effect Article 281 of the Constitution, and authorizes the Police Juries to divide their parishes into drainage districts, as contemplated by that article. It contains, among others, the following provisions, to-wit:

"*Sec. 10.* * * * That, whenever the interest of two or more contiguous drainage districts, or if such drainage district and any municipal corporation are identical, or if they have, to any extent, a community of interests in the cleaning and opening of natural drains, or new works of whatever nature they may be, said drainage districts and municipal corporations may undertake and complete such works as a joint enterprise, determining in advance the proportion which each drainage district and municipal corporation shall contribute to

said work; and provided, that, if the work so undertaken shall be paid for by a special tax levied under Article 281 of the Constitution, the said drain shall belong to, and the title shall vest in, the drainage district and municipality contributing said tax, in proportion to the said contributions. Provided, the provisions of this section do not prevent the Police Juries of the various parishes including in a drainage district incorporated towns as a part thereof."

The act further authorizes the Police Juries to appoint, for each drainage district established under its authority, three out of five, commissioners, the other two to be appointed by the Governor, and the five so appointed, to constitute a Board for the governance of such district, with all the powers necessary for that purpose, including the power to order elections, contract debt and issue bonds, for drainage purposes. Special provision is, however, made, to the effect that drainage districts already organized, under pre-existing laws, shall be left the option of remaining as they are or of reorganizing under the provisions of the act. It is unnecessary to inquire whether this act operated the repeal of the special legislation whereby the Mayor and trustees of New Iberia were vested with authority, to the exclusion of the Police Jury, to administer the affairs of that town, for, six days after its approval, the Governor approved the Act No. 33, of the same session, which contains the following, among other, specific grants of power, to said town authorities, upon the subject under consideration; to-wit:

"*Sec. 1.* * * * *Eighth.* The Mayor and Board of Trustees of the town of New Iberia may sub-divide the city into drainage districts and the said Mayor and Board of Trustees shall be, *ex-officio,* the drainage commissioners within these respective districts, and which districts shall have all the rights and privileges ordinarily belonging to drainage districts under the general law."

It only remains to be stated that this provision is in no manner weakened, but, on the contrary, is rather strengthened, by Act 114 of 1900, and being a later, and a special, statute, necessarily, controls, in case of any conflict between it and the earlier and more general legislation to which we have referred.

## II.

We have seen that, by the Act of 1888 (No. 107), the Police Juries were authorized to divide their parishes into drainage districts, and

. TERM OF 1901-1902. 655

Mayor and Board vs. New Iberia and Drainage District.

to appoint a Board, consisting of three commissioners, for each district, and that the Boards thus organized were vested with the powers necessary for the administration of the affairs of the districts to which they were assigned, including the power to order the elections contemplated by the act. We have also seen that, in 1890 (by Act No. 83), the General Assembly withdrew from the commissioners the power to order the elections and vested it in the Police Juries. And matters were in that condition when the present Constitution was adopted, Article 281 of which reads as follows (omitting certain language which is irrelevant to the present issue), to-wit:

"Municipal corporations, parishes and drainage districts * * * when authorized to do so by a vote of the majority in number and amount of the property tax-payers, qualified as electors * * * voting at an election held for that purpose * * * may incur debt and issue negotiable bonds therefor to the extent of one-tenth of the assessed valuation of the property within said municipal corporation, parish or drainage district, * * * and may be authorized by the property tax-payers voting at such election to levy and assess special taxes upon property subject to taxation in the parish, drainage district, or corporation; provided, said taxes, so imposed, do not exceed five mills * * * in any one year, nor run for a greater number of years than the number named in the proposition submitted to the tax-payers. No bonds shall be issued for any other purpose than that stated in the submission of the proposition to the tax-payers, * * * nor for a greater amount than therein mentioned; nor shall such bonds be issued for any other purpose than for paving * * * drainage * * * and other works of public improvement, the title to which shall vest in the municipal corporation, parish, or drainage district; nor shall such bonds run for a longer period than forty years * * * or be sold by the municipal corporation, parish, or drainage district, issuing the same, for less than *par*. The municipal corporation, parish, or drainage district, issuing such bonds shall provide for the payment of interest, * * * provided, that the total issue of bonds by any municipal corporation, parish, or drainage district, for all purposes, shall never exceed ten per cent. of the assessed value of the property in such municipality, parish, or drainage district. Provided, that the drainage districts availing themselves of this ordinance shall be limited to the rate of taxation herein fixed, and such districts shall be prohibited from levying contributions,

under the existing laws; and provided, further, that nothing herein contained shall prevent drainage districts from being established under the provisions of existing laws."

The purpose of this article is, unquestionably, to authorize the establishment of districts, autonomous for drainage purposes, and distinct from the parishes of which, for other purposes, they may form part. It will be observed, however, that the article does not undertake to establish such districts, or to prescribe by whom drainage districts, in general, or in particular, shall be established, or governed, and those matters, therefore, fall within the control of the General Assembly, and the legislation necessary to carry the article of the Constitution into effect was accordingly adopted. The first act passed for that purpose, Act No. 5, of 1899, failed to make any particular provision upon the subject now under consideration. Act No. 12, of 1900, authorized the Police Juries to establish drainage districts, and, with the Governor, to appoint commissioners to manage their affairs, conferring upon such commissioners the power, among others, to order the elections necessary to take the sense of the property tax-payers as to the levying of the special tax authorized by the Constitution, and the power to contract debt and issue bonds for the purposes contemplated by the act.

Fourteen days later, Act No. 114, of the same session, was approved. It is entitled "An Act to authorize any municipal corporations, parishes, or drainage districts, the City of New Orleans excepted, to incur debt, to issue negotiable bonds, therefor, to levy special taxes, and to provide the manner in which special elections shall be held in such parish, municipality, or drainage district of this State for the purpose of incurring debt, issuing negotiable bonds therefor; and levying special taxes for paving and improving streets, roads and alleys, purchasing or constructing a system of waterworks, sewerage, drainage, light, public parks and buildings, bridges, and other works of public improvement, the title to which shall vest in the municipality, parish, or drainage district, and to carry into effect Article 281 of the Constitution of 1898, and to repeal all laws contrary to and in conflict therewith."

By the terms of this act, the power to order the elections, contract the debt and issue the bonds necessary for the purposes contemplated by Article 281 of the Constitution is specifically vested in the Police Juries, and there is a repealing clause which reads: "That all laws,

or parts of laws contrary to, or in conflict with, the provisions of this act, be and the. same are hereby repealed, especially Act No. 5 of the Extra Session of 1899, and that this act take effect from and after its passage."

This act, being of later date than the Act No. 12, must control in case of conflict, unless some sufficient reason to the contrary be shown.

It is said to be unconstitutional, because its object is not expressed in its title, and because it is in derogation of Article 281 of the Constitution, in that, it attempts to divest the drainage districts of powers vested in them by that article.

In support of the first proposition, it is argued that the title does not refer to the repeal of any particular statute, but only to laws contrary to, and in conflict with, the provisions of the act, whilst the repealing clause especially mentions, and undertakes to repeal, Act No. 5 of 1899. The obvious answer to this is, that, confining the operation of the act within the limits of its title, it repeals only so much. of Act No. 5, of 1899, as is contrary to, or in conflict with, its provisions. This, however, strikes with nullity only so much of the act as is broader than the title, and does not effect the rest (State vs. Ferguson, 104 La. 249; State vs. Goff, not yet reported), nor does it effect the questions here presented, since the Act No. 5, of 1899, contains no provisions relating to the organization of drainage districts or the manner of their government.

The argument in support of the other proposition is, that the Constitution contemplates that the drainage districts shall be distinct entities, and that the effect of the act is to defeat that purpose by practically merging them in the parishes. The error here lies in the failure to distinguish between the drainage districts and the governing bodies provided for the administration of their affairs. Granted, that the drainage district is to have an autonomy distinct from that of the parish, nevertheless, the power to determine by whom its affairs are to be administered is left entirely within the discretion of the General Assembly. And, if the Convention which framed the Constitution did not deem it wise to control that discretion, certainly, the courts will not undertake to do so.

The situation resulting from the passage of the Act No. 114 is very much the same as that which was brought about by the adoption of Act 83 of 1890, and the idea suggested in both instances is, that there

were some members of the General Assembly who approved of the one method of governing the drainage districts and some who approved of the other method, and that those who approved of governing through the Police Juries constituted the majority upon the occasions of the latest action. And, as the matter of determining the method is left, by the Constitution, to the General Assembly, the action of that department of the government is beyond the control of the judiciary.

For these reasons, it is ordered, adjudged, and decreed, that the judgment appealed from be annulled, avoided and reversed, and it is further ordered, adjudged and decreed that there, now, be judgment, in favor of the Mayor and Board of Trustees of the town of New Iberia and the Police Jury of the Parish of Iberia and against the New Iberia and Bayou Carlin Drainage District, decreeing that the said Bayou Carlin Drainage District has no jurisdiction over the territory situated within the corporate limits of the town of New Iberia for the purpose of ordering elections for the imposition of taxes for drainage purposes; and that it has no jurisdiction in the matter of ordering elections in the Parish of Iberia for the imposition of taxes, or in the matter of contracting debt, or issuing bonds; for drainage purposes, in said parish. It is further ordered, that the defendant pay the costs.

BREAUX, J., having a property interest in the question at issue, recuses himself.

NICHOLLS, C. J., dissents, reserving right to assign reasons.

Rehearing refused.