STATE OF LOUISIANA EX REL. JONES ET AL. v. CARRADINE ET AL.

(November 18, 1929. Opinion and Decree.)
(December 16, 1929. Rehearing Refused.)

A. J. Wyly, of Lake Providence, attorney for Monroe W. Newman.

Martin H. Manion and H. W. Kaiser, of New Orleans, attorneys for respondents, appellees.

Henry & Cooper and A. M. Suthon of New Orleans, attorneys for relators, appellants.

JANVIER, J. Relators sue to set aside the result of an election of directors of the Standard Industrial Life Insurance Company, on the ground that two stockholders, Herbert J. Williams and Elliott A. Stewart were permitted to cast only two votes each although there was, at the time, fifty shares standing in the name of each on the books of the corporation.

Respondents reply that each of the two named stockholders really owned only two shares and that H. L. Jones, one of the re- lators, had, for illegal purposes, placed in the name of each of the two named stockholders forty-eight additional shares, because Jones owned more stock than, under Section 4, Paragraph (b) of Act 105 of 1898, he could legally vote.

That statute, which governs the organization and management of insurance companies, such as the Standard Industrial Life Insurance Company, in the section mentioned, provides:

(b) In the choice of directors, and at all meetings of the company, each stockholder shall be entitled to one (1) vote for each share that he holds not in excess of one-tenth (1/10) of the capital.

As there were outstanding only five hundred shares of capital stock no one stockholder could vote more than fifty shares. Jones owned a great deal more than fifty shares. If all his stock could be voted, he could control the election. If he could vote only fifty shares he could not control it.

Respondents contend that the transfers by H. L. Jones to Williams and to Stewart were not the result of real sales and, therefore, constituted fraud on the other stockholders and on the general public which is interested in preventing violation of State statutes.

Relators question respondents' right to contest the validity of the transfers, contending that they were made on the books more than one year before and that respondents are now estopped to attack their validity.

Relators had charge of the books of the concern and respondents did not and could not know of the transfers as soon as they were made. The many court records offered in evidence show a consistent and per-

sistent effort by respondents to prevent the voting of the said stock at the election which is now being investigated, as well as at the previous annual election.

Section 32 of Act 250 of 1928 and Section 4 of Act 122 of 1926 are called to our attention as authority for the claim that each shareholder is entitled to a vote for each share under the general corporation laws of this State, and that, therefore, Williams and Stewart are entitled to vote the stock standing in their respective names.

This statute in 1928 is a general law and must yield to the special provisions of paragraph (b) of Section 4 of Act 105 of 1898, which, as originally enacted, as well as amended by Act 122 of 1926, limits the vote of each stockholder in a corporation of this kind to 10 per cent of the total stock no matter how much stock he may own. Since no stockholder could vote more than 50 shares, it would be a violation of the statute to permit one to do indirectly and by subterfuge what he could not do openly and directly. The question then is solely whether or not the transfers to Williams and to Stewart were bona fide.

The evidence shows that neither Williams nor Stewart had any financial responsibility. It further shows that each gave in payment for the stock a document reading as follows:

"December 29th, 1927.
"Due H. L. Jones Two Thousand four hundred dollars ($2400.00) for 48 shares of the Standard Industrial Life Insurance Company, Inc., and I hereby pledge the full number of shares of the aforesaid stock to H. L. Jones as collateral security for this note and do deposit certificate No. 63 for 48 shares with him as security."

This document shows no maturity and does not stipulate for interest. Both suspicious omissions.

It also appears that Williams made and subscribed to an oath before a notary public to the effect that the forty-eight shares had been placed in his name solely for voting purposes.

It also appears that just before the prior election Jones had attempted to transfer to various members of his family the same stock, which he later transferred to Williams and Stewart, and which latter transfers are now the subject of this controversy. Jones could not transfer the stock to the members of his family because he discovered that there was a charter provision which prevented the transfer of stock to persons not already stockholders until it had been first offered to the other stockholders.

It is conceded that the result of the election would not have been changed except by permitting both Williams and Stewart to cast votes for the full number of shares standing in their names. If we hold that either is disqualified then the addition of the votes of the other would not change the result, but all of the circumstances leave us convinced that the purported transfers to both Williams and Stewart were not bona fide, and we feel that the trial judge was correct in refusing to set aside the election.

As to Monroe W. Newman the record shows that he was successful in the court below and, therefore, cannot now be heard to appeal from a judgment in his favor.

For the reasons assigned the judgment appealed from is affirmed, at the cost of relators.