79 So.2d 192 (1955)
Mrs. Agnes B. GILMORE, Plaintiff-Appellee,
v.
The STATE of Louisiana through the State Board of Education, Department of Public Education, Defendant-Appellant.
No. 3956.
Court of Appeal of Louisiana, First Circuit.
March 25, 1955.
*194 Fred S. LeBlanc, Atty. Gen., W. C. Perrault, Asst. Atty. Gen., W. D. Atkins, Asst. Atty. Gen., for appellant.
Watson, Blanche, Fridge, Wilson, Posner & Thibaut, Baton Rouge, for appellee.
TATE, Judge.
As specially authorized by Act 164 of 1952, plaintiff instituted suit against the State of Louisiana, through the State Board of Education, Department of Public Education, for 400 weeks compensation at the rate of $30 per week, together with interest, medical expenses of $1,000 and costs; and in the alternative, if "not entitled to the benefits of the Workmen Compensation Laws of Louisiana" in tort for damages in the amount of $69,019.96. Defendant filed exceptions of peremption and of no right and cause of action, both of which were overruled, and then an answer of general denial.
Defendant appealed from an award of compensation to plaintiff at the weekly rate of $30 not to exceed 400 weeks, together *195 with legal interest and $1,000 medical expenses.
In this Court plaintiff has answered the appeal, praying that the lower court judgment be amended to award damages in tort, as prayed for alternatively in the original petition.
Plaintiff was injured on April 5, 1952 while employed as housemother at the Louisiana State School for the Blind, operated by the Department of Education, State Board of Education, State of Louisiana.[1] She was tripped by some students, fell and suffered multiple fractures of her right leg, arm, and her spine. She was paid her full salary through May 31, 1952, but has been paid no compensation. This suit was filed June 22, 1953.
Plaintiff probably did not need special legislative authorization to file her claim for workmen's compensation benefits. Act 371 of 1946, LSA-R.S. 23:1312, and the adoption by the people of Act 385 of 1946, amending Article 3, Section 35, LSA-Constitution, removed constitutional bars to employees' suits for compensation against the State without special legislative authorization previously raised in Martin v. State, 205 La. 1052, 18 So.2d 613, Crain v. State, La.App., 1 Cir., 23 So.2d 336. Plaintiff chose, however, to proceed under special legislative authorization; possibly to avoid objections to procedure under LSA-R.S. 23:1312 as might be raised (see e. g., "Louisiana Legislation of 1926", 7 La. Law Review 23 at 81, 111), or because she might be relegated to a remedy in tort (this unquestionably requiring special legislative authorization) if it were held that her employment was not such State service as covered by our compensation act under LSA-R.S. 23:1034.
In substance, the State, defendant-appellant, contends that Mrs. Gilmore must be denied recovery because (1) the special legislative authorization under which she proceeded, Act 164 of 1952, is unconstitutional, null, and void; and (2) her claim for compensation benefits is perempted or extinguished under LSA-R.S. 23:1209 of our compensation act because of her failure to file suit within the year of the accident or of last payment in lieu of compensation.
The constitutional provision regarding legislative authorization of suits against the State if Article 3, Section 35, set forth in full as follows:
"[Suits against state.] Whenever the Legislature shall authorize suit to be filed against the State it shall provide the method for citing the State therein and shall designate the court or courts in which the suit or suits authorized may be instituted and may waive any prescription which may have accrued in favor of the State against the claim or claims on which suit is so authorized. The procedure in such suits, except as regards citation and original jurisdiction, shall be the same as in suits between private litigants, but no judgment for money rendered against the State shall be satisfied except out of monies appropriated by the Legislature for the purpose. For the purpose of such suits the State shall be considered as being domiciled in the Capitol. No such suits shall be instituted in any court other than a Court of Louisiana. Except as otherwise specially provided in this section, the effect of any authorization by the Legislature for a suit against the State shall be nothing more than a waiver of the State's immunity from suit insofar as the suit so authorized is concerned." (As last amended, Act 185 of 1946.) (Italics ours.)
The special enactment which authorizes the institution of this present suit by Mrs.
*196 Gilmore is Act No. 164 of 1952, which reads in part as follows:

"An Act
"To authorize Mrs. Agnes B. Gilmore, widow of Judge Walter T. Gilmore, to file suit against the State of Louisiana, through the Department of Public Education, State Board of Education, for workmen's compensation benefits, or in the alternative for damages, resulting from accidental and personal injuries suffered by her while in the employ of the Department of Public Education, State Board of Education, at the School for the Blind in Baton Rouge, Louisiana; to provide a method of procedure and the method of payment of the judgment which may be rendered in said suit; to provide a prescriptive period upon said claim; and to repeal all laws in conflict herein.

"Section 1. Be it enacted by the Legislature of Louisiana, That suit against the State of Louisiana, through the Department of Public Education, State Board of Education is hereby authorized to be filed by Mrs. Agnes B. Gilmore, widow of Judge Walter T. Gilmore, a citizen and a resident of the Parish of East Baton Rouge, State of Louisiana, upon her claim for workmen's compensation under the Compensation Laws of Louisiana, or in the alternative for damages in tort resulting from her accidental and personal injuries alleged to have occurred on April 5, 1952, while she was in the employ of the Department of Public Education, State Board of Education, and School for the Blind at Baton Rouge, Louisiana, through the negligence of servants, agents and employees and pupils of the School for the Blind.
* * * * * *
"Section 5. That the defendant in the suit herein authorized shall not be entitled to file a plea of prescription barring said claim; provided, that any suit entered upon authority herein granted shall be filed not later than the 1st day of July, 1953.

* * * * * *
"Section 7. That all laws or parts of law in conflict herewith are hereby repealed." (Italics ours.)
The foregoing special act authorizes Mrs. Gilmore to file suit for damages in tort alternatively to her claim for workmen's compensation. It is undenied that Mrs. Gilmore's status at the time of the accident was that of an employee of the Louisiana State Board of Education. As such, the payment of compensation under the provisions of our workmen's compensation act is "exclusive, compulsory, and obligatory," LSA-R.S. 23:1034. It was held in Crain v. State, La.App., 1 Cir., 23 So.2d 336, that by special statute the legislature could allow an injured State employee to sue in tort as well as compensation; but by constitutional amendment adopted within the year, the legislature was prohibited from creating a cause of action by special act, Article 3, Section 35, supra, set forth in full, especially italicized last sentence. The present provisions permit the legislature in authorizing suit against the State only to waive (1) the State's immunity from suit; (2) any prescription accruing in favor of the State. See also McKnight v. State, La.App., 1 Cir., 68 So.2d 652.
For these reasons we affirm the trial court ruling dismissing Mrs. Gilmore's alternative claim against the State in tort and affirm its ruling that workmen's compensation benefits provide Mrs. Gilmore's exclusive remedy.
The State's further contentions we will consider in order, as follows:
1. Invalidity of the Special Act:
The State's contention as to invalidity of the special act authorizing the present suit is primarily based upon the contention that it unconstitutionally attempted to create a suit in tort, as well as authorize suit for compensation; that also *197 therefore it violated Article 3, Section 16, LSA-Constitution, by embracing more than one object and having defective title.
We feel that a reading of the special statute indicates an intention only to permit suit alternatively in tort, should compensation coverage be denied.
As stated succinctly by the trial court, "The constitutional prohibition against the inclusion of more than one object applies only to laws enacted by the Legislature, and even then it has been liberally construed by our higher courts. In my opinion only one object is embraced in the act and that object is to authorize plaintiff to sue the State on her claim for damages growing out of injuries alleged to have been sustained by her. Furthermore, it was held by the Supreme Court in Lewis v. State, 207 La. 194, 20 So.2d 917, that the Legislature may authorize the institution of a suit against the State other than by the enactment of a law. Even if the act should be found invalid as a law, it abundantly signifies the Legislature's consent to the institution of this suit." See also Jefferson Lake Sulphur Company v. State, 213 La. 1, 34 So.2d 331, at pages 334-336.
If the special statute were construed as unconstitutionally attempting to create tort liability in the State, nevertheless the invalidity of one portion of the act would not invalidate the valid portion of the act, the latter being independent of the invalid portion, Conley v. City of Shreveport, 216 La. 78, 43 So.2d 223; Louisiana State Department of Agriculture v. Sibille, 207 La. 877, 22 So.2d 202; Womack v. Varnado, 204 La. 1019, 16 So.2d 825; Ricks v. Department of State Civil Service, 200 La. 341, 8 So.2d 49.
2. Plea of One Year Peremption:
The substance of the State's ingenious contention here is that the limitations period for instituting workmen's compensation suits under LSA-R.S. 23:1209 is one of peremption, not one of prescription. This being so, Article 3, § 35, supra, authorizes the legislature to waive only "prescription which may have accrued" and not peremption; and special Act No. 164 of 1952, supra, authorizing these proceedings, barred only the filing of a "plea of prescription", not the plea of peremption herein filed. Further, peremption extinguishing the claim, the special act unconstitutionally attempted to create a new cause of action. Therefore, it is argued defendant's plea of peremption should be sustained to suit filed June 22, 1953, to recover compensation for accident occurring on April 5, 1952, no compensation being paid therefor. (Her salary was paid per prior contract through May 31, 1952.)
"The basic difference between the two seems to be that statutes of prescription simply bar recovery whereas statutes of peremption completely extinguish the cause of action", 4 La. Law Review 624 at 626, in a very able note concerning Harris v. Traders & General Insurance Company, 200 La. 445, 8 So.2d 289, regarding the nature of limitations barring suit in workmen's compensation proceedings.
While some compensation cases denote the limitations as one of peremption rather than prescription, Brister v. Wray Dickinson & Company, 183 La. 562, 164 So. 415; Tierce v. United Gas Public Service Co., Inc., La.App., 164 So. 446, 447; Heard v. Receivers of Parker Gravel Co., Inc., La. App., 194 So. 142; Morgan v. Rust Engineering, La.App., 52 So.2d 86, the chief effect is that the plea is not waived if not specially pleaded, as is the case with the ordinary plea of prescription, see Article 3463, LSA-Civil Code, Article 346, Code of Practice. As Professor Wex Malone states in his standard work, Louisiana Workmen's Compensation, Section 384, at page 492, "the later decisions have termed the one year limitation as both peremption and prescription, and there are dicta in cases both in the Supreme Court and Courts of Appeal suggesting the period is prescriptive only", citing Harris v. Traders & General Insurance Company, 200 La. 445, 8 So.2d 289, Lunkin v. Triangle Farms, Inc., 208 La. 538, 23 So.2d 209, Mitchell v. Sklar, La.App., 196 So. 392. See also Jackson v. American Employers *198 Insurance Company, 202 La. 23, 11 So.2d 225.
We feel that the constitutional permission to waive "any prescription" provided by Article 3, Section 35, authorizes waiver by the Legislature of any time limitation within which suit may be filed against the State, whether referred to as peremption or as prescription or (as with compensation suits) indiscriminately as either. The limitation of one year for tort and wrongful death actions under Article 2315, LSA-Civil Code, is also technically for some purposes termed one of "peremption", and such tort suits can never be instituted against the State without special legislative authorization; if the legislature could not waive "peremption", those injured at certain periods between the biennial sessions of the legislature could receive subsequent authorization to sue only for a perempted right. The constitutional intent is plan to authorize the legislature to waive all limitations (prescriptions) of time barring suit.
We further feel that the plain legislative intent of Section 5, Act 164 of 1952, supra, specially authorizing this suit, was to waive limitation periods and permit plaintiff to file suit up through July 1st, 1953, which was timely done. As to the general compensation prescription provision barring suit after one year, (April 5th or May 31st, 1953) LSA-R.S. 23:1209, a special legislative enactment prevails over the general law concerning the same subject, Kearns v. City of New Orleans, La.App., 160 So. 470, State ex rel. Jones v. Carradine, 12 La.App. 42, 125 So. 135, and especially if the special act is enacted subsequent to the general act, Bertau v. Police Jury of Ascension Parish, 214 La. 1003, 39 So.2d 594, Mayor, etc. of Town of New Iberia v. New Iberia, etc., Drainage District, 106 La. 651, 31 So. 305.
That plaintiff, a lady in her sixties, is totally and permanently disabled as a result of the accident is not seriously disputed. Dr. Howard Witter, general practitioner, and Drs. Willard Dowell and Moss Bannerman, Orthopedic Specialists, testified that as a result of multiple fractures of the right arm, hip, and spine, even approximately one year after the accident plaintiff suffered pain, was unable to use her right arm, was unable to bear weight, and forced to wear a painful brace upon her back. Lay testimony indicated that she is unable to dress or bathe herself without assistance, and that she uses a cane to walk.
As pointed out by the State-appellant, the trial court inadvertently awarded compensation at the rate of $30 per week upon a monthly salary of $178 ($128 salary plus $20 food and $30 lodging), indicated by the record. Dividing this monthly salary by four as indicated in Ridgdell v. Tangipahoa Parish School Board, La.App., 17 So.2d 55, and Smith v. Tangipahoa Parish School Board, La. App., 21 So.2d 77, plaintiff received an average weekly wage of $44.50, 65% of which amounts to a weekly compensation rate of $28.93. The only court costs taxable against the State under LSA-R.S. 13:4521 are stenographer's costs of taking testimony.
The judgment awards compensation for four hundred weeks and of course what is meant is compensation during disability, not to exceed four hundred weeks.
Accordingly, the judgment of the lower court is amended to provide compensation at the rate of $28.93 per week (instead of $30) during disability, not to exceed four hundred weeks in all, with legal interest on past due installments commencing May 31, 1952, until paid, and to cast the State only for costs as authorized by LSA-R.S. 13:4521. As thus amended, the judgment is affirmed in all other respects.
Amended and affirmed.
NOTES
[1] This appears from answer of State admitting allegation; statutorily, the school is "administered" by the Board of Education through a separate executive committee and budget, however including Superintendent of Education as ex officio chairman of executive committee; LSA-R.S. 17:10-17:12.