102 So.2d 547 (1958)
Henry BYNUM, Plaintiff-Appellee,
v.
MARYLAND CASUALTY COMPANY et al., Defendants-Appellants.
No. 4561.
Court of Appeal of Louisiana, First Circuit.
April 21, 1958.
Rehearing Denied May 26, 1958.
Writ of Certiorari Denied June 27, 1958.
*549 Taylor, Porter, Brooks, Fuller & Phillips, Baton Rouge, for appellant.
Leon A. Picou, Jr., St. Francisville, Sam J. D'Amico, Baton Rouge, for appellees.
TATE, Judge.
This suit for workmen's compensation is by an employee of the State Penitentiary at Angola. Made defendants are the State of Louisiana, its Board of Institutions (the administrative agency charged with control of the penitentiary), and the Maryland Casualty Company, the insurer responsible for compensation liability arising at this penal institution.
The trial court found plaintiff totally and permanently disabled. The defendants appeal from judgment casting them in solido for weekly workmen's compensation at the maximum rate for 400 weeks, commencing with September 8, 1956. This judgment, likewise, allowed defendants credit so that each week's wages paid to Bynum at his regular rate following this date satisfied a week of defendants' compensation liability.
Defendants further filed in this court pleas of one and of two years' prescription and/or peremption under LSA-R.S. 23:1209.
Various factual issues are raised by the parties, but without making a detailed resume of the evidence, we think the following findings to be supported by a preponderance of the evidence:
1. Plaintiff Bynum, 67 years of age and rather obese, had been employed as the penitentiary's roads and bridge supervisor or foreman for approximately five years at the time of the trial below. Although his duties were supervisory in nature, they did require substantial physical participation in walking, bending, stooping, climbing, and rendering physical instruction and demonstration to the inmate road gang in construction activities.
2. In the course of his employment duties, Bynum suffered three accidents, for none of which has he been paid workmen's compensation as such:
(a) On April 19, 1953, while Bynum was poling a boat away from the landing, the pole broke, and Bynum suffered a pain in his left side whereafter the second accidenta left inguinal hernia was definitely medically diagnosed. According to Bynum, he reported to the then prison physician (whose testimony is unavailable, due to his ensuing death) and was informed he had a small hernia and a torn ligament, but that with eight or ten days' rest he'd be "all right". Bynum testified that he followed this advice and then "I felt pretty good and went right along with my work. It didn't bother me until I had this [next] accident in November of '54." (Tr-30.)
(b) During the fall of 1954, on a date stated by Bynum to be November 18, 1954, on attempting to move a heavy pipe at the prison sugar mill, he strained, and he testified: "Just seemed like it busted the whole [left] side aloose. * * * I went over and laid down, you know, it just made me sick." (Tr-deposition p. 18.) This accident was corroborated by the testimony of two convicts who were present as members of plaintiff's road gang (Tr-208, Tr-217), although they did not know the date other than that it was in the sugar grinding season of October-December of 1954. Plaintiff's supervisor further testified that Bynum reported the incident to him and that Bynum went to the doctor (Tr-88), although the supervisor made no record or report thereof, in reliance upon the doctor doing so. Dr. Azar, consulting surgeon for the prison, corroborated that Bynum reported to him at some time prior to June 7, 1955 (Tr-190), on which date the large inguinal hernia he had previously diagnosed was surgically repaired by this physician; he did not know the date of this initial interview since "no accurate record" was kept of it. Dr. Azar's history, however, contained *550 reference only to the earlier poling accident of April, 1953, when plaintiff first suffered pain in his left side.
(c) On a date fixed by Bynum as September 18, 1956, two months or so before the present suit was filed, he slipped off a culvert and fell 12 feet into Point Look Out Creek. The happening of this accident was again corroborated by the two convict members of the gang, and by the supervisor's admission that same was reported to him and that he brought Bynum at once to Dr. Azar. Dr. Azar has no recollection of the incident being reported to him, although he corroborates that Bynum reported back with continued complaints of pain in his left side and testicle. Bynum states that he worked with pain since the operation following the second accident, but that the pain is more intense since the third accident. (Tr-23-4.) (The District Court found Bynum's legal disability to date from this last accident.)
3. The preponderant medical and lay testimony, as well as the District Court's specific acceptance of Bynum's credibility as to the genuineness of his complaints, supports the trial court's finding that plaintiff Bynum is unable to perform the ordinary duties of his employment without suffering substantial pain thereby.
4. Bynum, although suffering pain, fully performs the duties of his employment and fully earns the wages paid to him; he is, in fact, an exceptionally conscientious and willing employee.
An employee who is unable to perform, without substantial pain, substantial duties of the employment in which he sustained the pain-producing injury is considered for purposes of the compensation act as totally disabled. See, e.g., Reed v. Calcasieu Paper Co., 233 La. 747, 98 So.2d 175.
In Wallace v. Remington Rand, Inc., 229 La. 651, 86 So.2d 522, Johnson v. Cabot Carbon Co., 227 La. 941, 81 So.2d 2, and Mottet v. Libbey-Owens-Ford Glass Co., 220 La. 653, 57 So.2d 218, our Supreme Court overruled pleas of prescription filed by employers to compensation suits filed by employees more than a year (but within two years) following accidents which produced what was held to be total disability, holding that it would be conjectural to find the disability legally "manifest" during the period of more than a year in which each of these employees worked for his employer following the accident.
Based upon such cases, astute counsel for defendants-appellants urges that the present employee cannot be considered legally disabled, because until he ceases working for his employer such disability could not be legally manifest or compensable. We do not, however, interpret these cases as overruling or altering the long established jurisprudence that an employee unable to perform his duties without pain is totally disabled within the meaning of the compensation act; they simply hold that for purposes of prescription the courts will not retrospectively assume as proven a total disability by reason of pain during an interval at which the employee did in fact perform his full duties. To this effect do we believe the statement found in the Wallace case at 86 So.2d 522, 525:
"True enough, the law did not require plaintiff to work during those 70 tedious weeks following the accident enduring the pain that he must have continuously experienced and perhaps a man of less fortitude would have immediately stopped working and demanded compensation for total permanent disability. But for us to presently conclude that the injury developed on the day of the accident would be dealing in conjecture and the commencement of prescription cannot be decided on that basis."
See, also, Malone, Louisiana Workmen's Compensation Law, (1955 Pocket Parts) Section 384, esp. p. 79.
This indicates to us that even though from hindsight the plaintiff Wallace might *551 have recovered compensation for total disability during the period in which he performed his duties with pain following the accident, for purposes of prescription such past total disability of Wallace, being conjectural, was not manifest so as to commence prescription running. But, we are not called upon to conjecture as to the present disability of the instant employee, who, although he is still performing the duties of his employment but with substantial pain, is totally disabled within the contemplation of the compensation act.
Thus, the cited Wallace, Johnson, and Mottet cases are inapplicable as supporting defendants' argument that no legal disability exists when the employee continues to perform his full duties, although with pain.
A substantial question exists as to which of the three accidents the employee's present disability can be ascribed.
The leading case of Carlino v. United States F. & G. Co., 196 La. 400, 199 So. 228, is, of course, authority for the proposition that successive incidents at work aggravating a previous disability can each be regarded as a separate accident. In the Carlino case, a hernia recurred on May 23, 1937, as proved by examination of the physician at the time who found a small lump or swelling; the employee continued working, although able to do only the lighter part of his duties, but on August 1, 1937, sustained a complete rupture, which as the most recent accident was held to be the effective cause of his present disability, although the employee likewise continued drawing his pay and doing the lighter portion of his duties following this accident up through the trial in 1939.
Similarly, where in Brock v. Jones & Laughlin Supply Co., La.App., 39 So.2d 904, an employee sustained an incomplete hernia while working for one employer which was aggravated by additional strain while working for another employer a few days later, this court cast both employers solidarily for the employee's total disability, and thus, in effect, held both the initial and the aggravating strains to be separate accidents.
In the present case, we think very clearly that the initial slight hernia of April, 1953 (although probably legally disabling due to the probability of aggravation, Ashworth v. Calcasieu Paper Co., La.App. 1 Cir., 85 So.2d 681), produced no manifest disability or painful symptoms after the first ten or twelve days, and the second incident, when plaintiff pulled the pipe allegedly in November, 1954, substantially aggravated the latent condition so as undoubtedly to be a second accident.
Following this second accident, the hernia was surgically repaired, and the consensus of the medical testimony is that the surgical repair in itself was successful, although, nevertheless, if plaintiff's complaints of pain are genuine, residual disability through nerve or vein involvement or damage at the site of the hernia's repair is a medical possibility, which, of course, would be compensable as total disability. Cf., Reed v. Calcasieu Paper Co., 233 La. 747, 98 So.2d 175, Sumrall v. J. C. Penny Company, La.App. 1 Cir., 101 So.2d 758.
The alleged further disability resulting from the third accident of September 18, 1956, when plaintiff Bynum fell off a culvert to the ground 12 feet below and felt a sharp pain in his groin, presents a more complicated factual question.
The two general surgeons testified that the surgical repair had not been affected by this trauma, although such a fall could possibly have produced a muscular strain in the immediate vicinity of the hernia repair which, if plaintiff's complaints were genuine (which evaluation was for the court), was disabling but which might be expected to subside in time and was, therefore, temporary rather than permanent.
The two general practitioners testifying on behalf of plaintiff definitely felt his symptoms of pain and tenderness to be genuine and the probable result of residual nerve involvement from the surgical repair *552 of June, 1955, aggravated by the fall in September, 1956 (cf., Tr-249), although the surgical repair itself did not break down. One of these medical witnesses found marked swelling at the site of the hernia repair when he examined Bynum in January, 1957, after plaintiff had been actively at work for a few days.
A psychiatrist testifying felt that, assuming the complaints of pain had no organic basis, plaintiff was suffering from an anxiety psychoneurosis producing genuinely felt pain resulting from the series of psychic traumasthe three accidents and the surgery involving the hernia repairand that the last accident could be the trigger which activated the neurosis into disability. (Tr-45.) Such a disability is, of course, also compensable. Mamon v. Farnsworth & Chambers, La.App. 1 Cir., 86 So.2d 764, Tate v. Gullett Gin Co., La.App. 1 Cir., 86 So.2d 698.
Whether, as a medical question, the last accident aggravated or caused plaintiff's present disability depends, as will be seen from the above summary, essentially upon whether his complaints were truthful of substantially greater pain activated following the third accident. This is also the basic factual issue involved in the determination of whether this third accident legally caused or substantially contributed to plaintiff's present disability so that such disability is compensable as flowing from the accident in question.
Both of these questions were resolved in plaintiff's favor by the trial court's specific favorable evaluation of plaintiff's credibility and by its determination that the accident of September 8, 1956, produced plaintiff's present disability.
Ultimately, as the medical witnesses agree, only plaintiff Bynum can tell whether he suffered substantially greater pain following the accident of September, 1956. Bynum testified positively that this result followed the last accident (Tr 23-24, Tr-Dep. 30), and the District Court accepted his testimony as truthful. It is somewhat corroborated by Bynum's much greater interest in securing medical attention following the last accident, when formerly he had somewhat stoically accepted the discomforts attendant upon his condition. Further, while Bynum's supervisor testified that Bynum, although performing his full duties, consistently complained of pain at the site of the operation in the left side following the second accident (Tr-90) but did not complain following the third accident to a greater extent (Tr-97, 102); a convict member of his road gang under his daily supervision testified that Bynum had never complained to them of his ailment until after this last accident. (Tr-207.)
Under all the medical and lay evidence, we are unable to hold that the District Court committed manifest error in finding that the third accident of September, 1956, caused plaintiff's total disability. Apparently by typographical error, the first court described the date of the third accident as September 8th instead of, as the evidence and pleadings show, September 18, 1956; this clerical error will be corrected by amendment of the judgment.[1]
*553 Thus, as in Stansbury v. National Auto. & Cas. Co., La.App. 1 Cir., 52 So.2d 300, we find that although the plaintiff who remained at work for his employer was totally disabled within the meaning of the compensation act by a prior accident, nevertheless the second accident alsoby materially aggravating the residual condition from the first accidentproduced total disability within the meaning of the compensation act. (In the Stansbury case, the employer had a different insurer at the time of the second accident, but both insurers were held responsible for the employer's compensation liability.) This, of course, is also the holding in Carlino v. United States F. & G. Co., above cited. Cf. also, White v. Taylor, La.App. 2 Cir., 5 So.2d 337.
Defendants-appellants re-urge here their exception of no cause of action on behalf of the State of Louisiana and of the Louisiana Board of Institutions. These exceptions are based upon LSA-R.S. 23:1312 of the compensation act, which pertinently provides:
"Suits against the State shall be instituted in the District Court for the Parish of East Baton Rouge, and any suit against a public board, commission, or agency of the State * * * may be instituted in the district court either of the domicile of such public board, commission, or agency, or of the domicile of the employee as it existed at the time of the accident or injury on which the suit is based. * * *" (Italics ours.)
Bynum filed the present suit in West Feliciana Parish, where he resided both then and at the time of the various accidents.
The Louisiana Board of Institutions, a State board or agency created by Article VI, Section 30, Louisiana Constitution, LSA, as amended, is a "public board, commission, or agency of the State" within the meaning of the above statutory enactment conferring legislative consent to suits against same for workmen's compensation. Chase v. Pointe Coupee Parish School Bd., La.App. 1 Cir., 39 So.2d 466, Evans v. Louisiana Bd. of Education, La.App. 1 Cir., 85 So.2d 669, Gilmore v. State, La.App. 1 Cir., 79 So.2d 192. Cf., Duree v. State, La.App. 1 Cir., 96 So.2d 854.
Cobb v. Louisiana Bd. of Institutions, 229 La. 1, 85 So.2d 10, relied upon by defendants-appellants, did not hold that this State board could not be sued; it held only that such board could not be sued without legislative consent. Such consent is here furnished by specific authorization of the compensation act to compensation suits by public employees against public boards. The exception of no cause of action filed on behalf of the Louisiana Board of Institutions was thus correctly overruled by the trial court.
However, the legislative authorization of compensation suits against the State of Louisiana (as distinguished from a public board thereof) set forth in LSA-R.S. 23:1312 above-quoted, designated the court in which such suits must be brought as the District Court of East Baton Rouge Parish, See Article 3, Section 34, La. Constitution. Therefore, this suit was improperly brought against the State itself in West Feliciana Parish. Cf., Martin v. State, 205 La. 1052, 18 So.2d 613. The exception of no cause of action filed by the State must be sustained, and the judgment will be amended accordingly.
*554 For the above reasons, the judgment of the District Court will be amended so as to sustain the exception of no cause of action filed by the State of Louisiana as defendant-appellant, and it will be further amended so as to award compensation from September 18, 1956 (instead of September 8, 1956); as thus amended, it is affirmed in all other respects.
Amended and affirmed.
NOTES
[1] It should probably be remarked that the District Court allowed defendants-appellants credit for wages paid during total disability, in accordance with Carlino v. United States F. & G. Co., 196 La. 400, 199 So. 228, Scalise v. Liberty Mutual Ins. Co., La.App. 1 Cir., 84 So.2d 88, and Carpenter v. E. I. Dupont, etc., La.App. 1 Cir., 194 So. 99. These cases hold that when an injured employee is paid full wages although transferred to lighter duties because of his work-produced disability, the wages paid are not fully earned and are not commensurate with the services rendered and should be treated as payments in lieu of compensation pursuant to a mutual recognition of compensable disability and an implied agreement to this effect, both for purposes of interrupting prescription and of allowing the employer credit upon his compensation liability.

Although some doubt is cast upon this doctrine by some expressions in Wallace v. Remington Rand, Inc., 229 La. 651, 86 So.2d 522, and although in any event under this Wallace case and under Mottet v. Libbey-Owens-Ford Glass Co., 220 La. 653, 57 So.2d 218, such a doctrine could not apply in the present situation since the employee continued to fully perform although with pain his ordinary duties and to fully earn his wages, this issue is not before us in the present appeal, since the employee neither appealed nor answered the appeal.