LOTTINGER, Judge.
Petitioner filed suit in workmen’s compensation for total and permanent disability for injuries sustained during the month of February 1955, while working for H. B. Bruser, a distributor for Gulf Refining Company. Mr. Bruser’s compensation insurer, Royal Indemnity Company is joined as a party defendant. This suit was consolidated for trial with another suit filed by petitioner against Iowa Mutual Insurance Company, for injuries allegedly sustained as a result of an accident while working for Sands Products Company during April of 1956. The Lower Court rendered judgment for total and permanent disability against H. B. Bruser & Royal Indemnity Company, and dismissed the suit against Iowa Mutual Insurance Company. The petitioner took an appeal in his suit against Iowa Mutual Insurance Company and the defendants appealed in the suit against H. B. Bruser et al.
The facts show that petitioner was employed by H. B. Bruser, a resident of the Parish of East Baton Rouge, for several years prior to 195-5. His duties with'Mr. Bruser was the loading and delivering of gasoline and oil products. During the month of February 1955, the petitioner delivered certain products to a producer and while loading an oil drum on a truck, suffered pain to his back. He was treated for the injury by Dr. Pickell, a specialist in internal medicine, from the time of the injury until December of 1955. Dr. Pickell testified that his diagnosis showed a pos *851 sible herniated disc, which would require surgery to confirm. Dr. Pickell testified further that his last examination of the petitioner was on December 28, 1955, at which time the petitioner was permanently and totally disabled to perform hard manual labor.
Subsequent to the accident of February 1955, the petitioner continued to work for Mr. Bruser doing lighter work. He was off for two or three weeks at a time due to his back injury and was fired by his employer because he was always complaining of his back and was unable to satisfactorily perform his work. Subsequent to his discharge by Mr. Bruser, the petitioner claims that he continued to suffer from his back. However, he claims that it was necessary for him to secure employment because of his family, and he went to work for Roys’ Produce Company delivering produce. Petitioner worked for Roys’ Produce Company for a period of about four days when it was necessary for him to quit because he was unable to load and deliver produce. He then went to work for Layton Sugar Company doing general plantation work. He only worked for these people a short while because he determined he was unable to do this work because of his back injury. On or about January 6, 1956, the petitioner applied for work with Sands Products Company. He was sent to Dr. John M. Hopper in Baton Rouge for a pre-employment physical examination. The petitioner admits that he did not tell Dr. Hopper of his injury in February 1955 because he needed work and he knew that if Dr. Hopper was informed of the injury he could not go to work for Sands Products Company. During the course of the examination by Dr. Hopper, petitioner claims that he suffered pain while bending and standing on his toes. However, as the doctor did not know of the injury or the pain he was approved as able to perform work with Sands Products Company. During his employment with Sands Products Company the petitioner drove a truck, lifted bags of cement weighing some 96 pounds each, and operated a cement mixer. He claims that this work was done under pain and that he wore a strap or corset from the time of his injury in 1955 until the time of the trial. During April of 1956, while in his employment with Sands Products Company, petitioner picked up a bag of cement and suffered such pain that it was necessary for him to lie down.
The petitioner first filed suit against H. B. Bruser and his insurer alleging that he was totally and permanently disabled as a result of the accident which occurred' in 1955. The defendants filed a plea of prescription which was overruled by the Lower Court evidently for the reason that he had returned to lighter work with them at full pay and that one year had not expired between the time of his discharge and the date of filing of the suit. The defendants then filed an answer which, in substance is a general denial. The suit against Mr. Bruser and his insurer was filed on March 13th, 1956. On November 19, 1956 the petitioner filed suit against Iowa Mutual Insurance Company, the insurer of Sands Products Company. The defendant denied that the petitioner received an accident or injury while working for its assured.
As stated above, the Lower Court gave judgment in the suit against H. B. Bruser et al., for total and permanent disability, at a rate of $30 a week commencing on February 1, 1955 for a period not to exceed 400 weeks, subject to a credit of $30 a week from February 1, 1955 through August 31, 1955, during which period petitioner was paid full wages although he was off for some time and did light work the other time. The Court also gave judgment for petitioner for medical expenses and all costs. In the suit against Iowa Mutual Insurance Company, the Lower Court gave judgment for defendant and dismissed the petitioner’s demand. No written decision was handed down by the Lower Court. The medical testimony, we think, conclusively shows that the petitioner suffered a back injury in February 1955, which was diagnosed as a possible herniated disc. Dr. Pickell testified *852 that on his examination in Februaryof 1955 the petitioner was suffering from such an injury, and that he was still suffering from same on December 28, 1955, when petitioner was again examined by Dr. Pickell. Dr. Pickell testified that in his opinion the petitioner was totally and permanently disabled, and that the only treatment would be prolonged therapy or surgery.
Dr. Forman, a neuro surgeon, examined petitioner on June 7, 1956, and concluded that he was suffering from a ruptured inter-vertebral disc. Dr. Forman said that the petitioner gave him no history whatsoever of an injury during April 1956, but that the petitioner did claim that his injury was received as a result of the accident of February 1955. Dr. Forman testified that petitioner’s chances of recovery without surgery were nil. Dr. Dowell, an orthopedic surgeon, examined the petitioner on June 1, 1956. He testified that the petitioner gave a history of the accident in 1955, and stated that he did not recover from the 1955 injury but reinjured his back in 1956. Dr. Dowell also diagnosed the injury as a herniated intervertebral disc, which required surgery. The petitioner was referred to Dr. Dowell by Dr. Hopper, a general practitioner, and to whom the petitioner was sent following his injury of April 1956.
The petitioner himself testified that from the date of the accident in February of 1955, he has continuously suffered from his back. His pain has subsided somewhat with rest, however, whenever he did or attempted to do any labor, he did so under great pain. We feel that the evidence conclusively shows that the petitioner was totally and permanently disabled as a result of the accident of February 1955, as the jurisprudence of this state does not require a compensation claimant to do work while suffering pain. The question is, therefore, whether or not there was an accident during April of 1956 which caused a new injury, or aggravated a preexisting injury to such extent as to hold Iowa 'Mutual Insurance Company liable for compensation payments. Due to the difficulty with which the petitioner performed his work following his accident of February 1955, we do not think that he suffered an additional accident or injury while working for Sands Products Company which would come under the provisions of the workmen’s compensation act. The defendants, H. B. Bruser et al., has cited Williams v. Russell, La.App., 87 So.2d 761, as support of their position. In that case the petitioner suffered an old back injury some seven or eight years prior to the new back injury. Between the two injuries petitioner did heavy manual labor for a period of some seven or eight years without ill effects. In that case the Court held that if any trouble existed due to the old injury that trouble was latent, and that the disability of petitioner to earn a living was caused by the new injury. We do not feel that that case helps in the determination of our problem, as the facts there show that the petitioner had recovered to such an extent that he could successfully perform heavy manual labor, while in the present case, the evidence shows that the petitioner attempted to work for two employers without success before securing employment with Sands Products Company which was performed by petitioner under great pain. We have also been cited to Stansbury v. National Auto & Casualty Insurance Company, La.App., 52 So.2d 300. In that case the petitioner fractured his leg while working for a seafood company. He was treated for said leg and his doctor told him to use the leg as much as possible. Some time later he returned to work for the same company, doing lighter work. While working for the same company the same leg was' again fractured in the same location. Two suits were filed because the employer’s compensation insurance carrier had been changed between the accidents. The Court held that these were two separate and distinct fractures to the leg, and the record shows that petitioner was successfully recovering from the first fracture at the time he received the second fracture.
*853 Defendants, Bruser et al., also cited White v. Taylor, La.App., 5 So.2d 337, 340. In this case plaintiff was injured on October 5 when a wheelbarrow loaded with ninety to one hundred bricks turned over on him and injured his back. He returned to work on October 7 for a sub-contractor and worked for one hour in pain when he twisted his hack. The court said:
“There is no doubt, in our minds, that the first accident would have caused total disability to deceased in a very short time in the condition he was and there is strong probability that the second accident, without the first having happened, would also have soon caused total disability, but ive are convinced that it took a combination of the two accidents to totally disable the deceased at the time that he became disabled on October 7,1939.”
For that reason all defendants were held liable in solido. But we do not think the facts and findings in that case to be applicable here.
We have also been cited to Estilette v. U. S. Fidelity and Guaranty Co., La.App., 64 So.2d 878, 881. In this case the plaintiff was working for a funeral home and was involved in an accident on November 5, 1950 and suffered a crushing injury to the chest with fractures of the left second, third, fourth, and fifth ribs, fractures of the sturnum or breastbone in two places, fractures of the upper alveolar process, and loss of some teeth. Some time later and while still suffering from the first accident, while working for himself on April 4, 1951 while helping lift a casket, he strained himself and the pain in his chest got worse. This court stated:
“First, defendant contends that plaintiff’s present disability was not caused by the accident of November 5, 1950 but was caused by plaintiff’s straining and exertion on April 4, 1951, at which time plaintiff himself was owner of the business. But we see no merit in this. While plaintiff •had made apparently satisfactory recovery after the accident in 1950 so that the doctor felt he was justified in first instructing him to resume light work and then later to increase the amount of work he was doing, actually plaintiff’s recovery had not been as full .as he and the doctor thought. Proof of this is seen in the subsequent events, to wit, that while obeying the doctor’s instructions and trying to do work customary in his employment he aggravated the area of the injury and caused definite disability again which, the medical evidence indicates, will not heal by natural processes. Plaintiff’s first accident on November 5, 1950 was the sine qua non. Without it there would have been no difficulty resulting from the lifting he did on April 4,1951.”
The situation in the present case is entirely different from the situation presented in the cited cases except the Estilette case. The record shows that the petitioner suffered total and permanent disability as a result of the accident of February 1955, and that said disability would continue until remedied by surgery or prolonged therapy. The facts further show that the petitioner suffered pain after the 1955 accident until the time of the trial, and that the only time the pain would subside would be when he rested or took dope pills which were prescribed by one of his' doctors. The petitioner testified that after working all day he would go home and attempt to sleep on a board because his back was paining him so much.
The petitioner testified that during the period from his injury in 1955 until the date of the trial it was necessary for him to wear a brace to protect his back.
We feel that the evidence conclusively shows that the petitioner was totally and permanently disabled as a result of the injury to his back while working for H. B. Bruser in February 1955, and that said disability continued until the time of the *854 trial. Although the petitioner subsequently-attempted to work in order to support his family, we do not feel that Sands Products Company or their insurer can be held liable for compensation payments under the facts presented.
As to the plea of prescription filed in the suit against H. B. Bruser et al., we feel that same was properly overruled because the records showed that petitioner continued to receive full wages in lieu of compensation until his employment was terminated in August of 1955, and a full year had not elapsed between the time of his discharge and the time of filing suit. A separate judgment will be rendered in the suit against Iowa Mutual Insurance Company.
For the reasons assigned, the judgment of the Lower Court will be affirmed, all costs of this appeal to be paid by the defendants.
Judgment affirmed.